IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CASE NO. 1:08-CV-0361-PLF

**RECEIVED**

MAY 2 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PAUL SCINTO, SR.,                    ]
                                     ]
    PLAINTIFF;                   ]
                                     ]
    VS.                          ]
                                     ].
FEDERAL BUREAU OF PRISONS, et al.    ]
                                     ]
    DEFENDANTS.                  ]
-----------------------------------------------------------------]

RESPONSE & OBJECTIONS TO:
"DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE
EASTERN DISTRICT OF NORTH CAROLINA"
with
SUPPORTING AFFIDAVIT

---

PAUL SCINTO, SR., Pro-Se Plaintiff, responds and objects to "DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF NORTH CAROLINA"; and requests that this honorable Court deny their Motion and allow this Bivens type Civil Rights Lawsuit to proceed to trial so that a jury can determine each and every claim presented.

The Plaintiff states for the record that each of his prior <u>verified</u> pleadings as well as the instant one, now before the Court, are tantamount to sworn affidavits; and are incorporated by reference into this responsive pleading in response to the "DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF NORTH CAROLINA".

INTRODUCTION

This case is a Bivens type Civil Rights Lawsuit (Complaint, DE# 1) made pursuant to 28 U.S. Code §s 1331, 1343 and 1391, against: the Federal Bureau of Prisons (BOP), a division of the U.S. Department of Justice; Harley G. Lappin, BOP Director; Kim M. White, BOB Mid Atlantic Regional Director; Patrica Stansberry, Warden, FCI-Butner-Low[1]; Susan G. McClintock, Camp Administrator,

---

[1] Defendant Stansberry is now Warden at FCI - Petersburg, VA.

FPC - Butner[2]; and  Richard Holt, Jr., Senior Officer Specialist. All Defendants are charged in their "official capacities"; Defendants Stansberry, McClintock and Holt, Jr. are also charged in their "individual capacities" based on their direct and deliberate actions resulting in the constitutional violations complained of.

The Government on behalf of the Defendants moves this Court to Dismiss this Civil Rights Lawsuit and alleges that:

1. the "Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies";

2. the "Court cannot exercise personal jurisdiction over several of the named Defendants" (those being Defendants: White, Stansberry, McClintock and Holt, Jr.);

3. the Plaintiff has failed "to State a claim against several of the named Defendants who are sued in their "official capacities".

The government also argues, that in the alternative, if the Complaint survives the Defendants' Motion To Dismiss, this Court is an improper venue because the acts complained of occurred in North Carolina.

The Plaintiff responds, that given the facts and circumstances of the instant case, each of these government contentions is not applicable and therefore not valid.


### SUBJECT MATTER JURISDICTION

The Defendants argue that "the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claim because Plaintiff failed to exhaust his administrative remedies." (DE#13, pg.1). The Plaintiff will show that this Court has subject matter jurisdiction over this cause for the following reasons:

1. The Tort Claim Issues: The administrative remedy procedure is not applicable to the issues presented in the Plaintiff's Tort Claim (DE#1, Exhibit 5). The Regulation promulgating the use of Tort Claims is established by Congress and encoded in: 28 CFR § 543 Subpart C. Additionally, 28 CFR § 542.10(c) specifically **excludes** the need for the administrative remedy procedure with respect to Tort Claims. As such, the Tort issues of: wrongful confinement in the SHU; loss of the statutory time reduction allowed pursuant to 18 USC § 3621; and the injuries sustained to the Plaintiff while confined to the SHU are rightfully before the Court. This fact is confirmed by the FBOP Regional Counsel in her letter denying the Plaintiff's Tort Claim, wherein she specifically states that "if you are dissatisfied with

---

2   Defendant McClintock is now Associate Warden at FCI - Safford, AZ.

this determination, you may file suit in the appropriate United States District Court not later than six (6) months after the date of the mailing of this notification." (DE#1, Exhibit 6). Furthermore said regional counsel never raised the defense of failure to utilize the <u>administrative remedy procedure</u> and therefore said defensive claim raised under FRCvP 12(b)(1) should be forfeited and waived with respect to the Tort issues.

    2. <u>The Administrative Remedy Defense</u>: The Plaintiff's remaining issues consisting of: deliberate indifference to his multiple medical problems; and the forcing of the sick and disabled Plaintiff to work in non-sedentary assignments; are properly before the Court, given the facts and circumstances of the case.

    The Defendants argue that the Plaintiff did not <u>exhaust</u> his administrative remedies as set forth by Regulation (28 CFR § 542.10 *et seq.*); and they provide the Court with a "Declaration Of James R. Schluter" - the "Administrative Remedy Specialist for the Federal Bureau of Prisons (BOP) in Washington D.C." (DE#13, Ex. A), detailing the Administrative Remedy Procedure, and providing a statement showing that the BOP "Sentry" Records indicate that the Plaintiff carried only one Administrative Remedy to completion[3]. The Defendants then conclude that; as there is no record of Administrative Remedies for the non-Tort Claim issues raised in this lawsuit, the Plaintiff must have failed to exhaust the Administrative Remedy Procedure; and is therefore not properly before this Court for lack of subject matter jurisdiction.

    This argument fails because it is based on the premise that the Administrative Remedy Procedure was **made available** to the Plaintiff with respect to the non Tort Claim issues raised. The Plaintiff will show; in his Affidavit (EX. 1) with supporting documentation; that the Administrative Remedy Procedure was consistently denied to the Plaintiff while incarcerated at the Butner Prison Complex and therefore the Administrative Remedy Procedure **was not made available** to the Plaintiff - thereby rendering the exhaustion of the Administrative Remedy Procedure an impossibility in the instant case. Thus the Court does have Subject Matter Jurisdiction, as the Plaintiff had **exhausted all administrative remedies made available to him, and is therefore rightfully before this Court.** The Plaintiff will further attest that he was consistently threatened, by several FPC - Butner Staff members[4],

---

3  Plaintiff filed an Administrative Remedy Procedure with respect to a Statutory Good Time issue while at the FPC at Seymour-Johnson AFB. The Administrative Remedy Procedure consists of: (1) an attempt at informal resolution with unit team; then to (2) an appeal to the Warden (using Form BP-9); then to (3) an appeal to the BOP Regional Office (using Form BP-10); then to (4) an appeal to the BOP Central Office (using Form BP-11). If all preceding steps have been denied the prisoner may then seek redress in the appropriate Federal District Court.

4  Named Defendant - Camp Administrator Susan G. McClintock; and unnamed Defendants: Camp Physician Dr. Philip; Physician Assistant Menendez (sic); Staff Kitchen Boss - Officer Cisco (sic); Case Manager Springle (sic) - Mr. Springle told Plaintiff that if Plaintiff persisted in bothering him he would "lock him up so fast his head would spin" -

who stated that there would be repercussions for "writing paper on them"; and in fact the Plaintiff received at least two (2) Incident Reports by Officer Cisco which were, subsequently "torn up" by the Supervising Lieutenant at the preliminary hearing[5].

The Plaintiff has included in his attached Affidavit no less than seventeen (17) instances of unanswered attempts at informal resolution. The Plaintiff has memorialized this malfeasance in his March 2, 2006, letter to his Congressman, Walter B. Jones (Affidavit Exhibit 25). Administrative Remedies were simply not made available to the Plaintiff - he has therefore exhausted them.

The purpose and scope of the Administrative Remedy procedures were promulgated by Congress and set forth in 28 CFR § 542.10:

(a) *Purpose.* The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement....

(b) *Scope.* This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement....

The responsibility to ensure that this system of Administrative Remedies is established and functioning properly, is encoded in 28 CFR § 542.11:

(a) The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:

(1) Establish procedures for receiving, recording, reviewing, investigating, and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;

(2) Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;

(3) Conduct an investigation into each Request or Appeal;

(4) Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.

---

5    These types of threats and retaliatory wrongdoings by BOP Staff under Warden Stansberry are a primary reason why the Plaintiff sought review in the Federal District Court of Washington DC.

(b) Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.

It is clear from the undisputed facts and the promulgated Federal Regulations, that specific responsibilities designated to the BOP and its staff, on all levels, were not carried out in the instant case. As no administrative remedies were made available to the Plaintiff; and as he was threatened and punished for pursing his right to pursue the Administrative Remedy Procedure; and as the Plaintiff sustained injury; the Federal Courts do have Subject Matter Jurisdiction.

The Supreme Court in Booth v. Churner, et al. 532 U.S. 731; 121 (2001) states the following:

"[*9] II In the aftermath of the Prison Litigation Reform Act of 1995, n3 *42 U.S.C. § 1997e(a) (1994 ed., Supp. V) * provides that 'no action shall be brought with respect to prison conditions under *section 1983 * of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**' (emphasis added). The meaning of the phrase 'administrative remedies . . . available' is the crux of the case,... [*12] .... Each of the parties also says that the plain meaning of the words "remedies" and "available" in the phrase **"such administrative remedies . . . available" is controlling**. (emphasis added).[6]

It is clear from the reading of this citation, that exhaustion of Administrative Remedies is dependent on the availability of the Administrative Remedies to the inmate; and that this availability of the Administrative Remedies procedure is the controlling factor.

This premise is acknowledged in the American Constitution Society For Law & Policy article: Preserving the Rule of Law in America's Prisons [Margo Schlanger and Giovanna Shay, March 2007, at 9.]

"...administrative options are controlled by the prison system itself. By the very nature of their legal status and limited access to resources, prisoners are apt to take wrong or incomplete steps in pursuit of prison-conditions claims by relying on whatever information is available to them. In practice, the PLRA may also create perverse incentives for prison officials to shield themselves from liability by imposing additional procedural obstacles on inmates who file administrative claims.

It should also be noted that the failure of the Defendants to provide the means by which the Plaintiff could file the Administrative Remedies is a violation of the First Amendment guarantee to "petition the government for a redress of grievance". It should also be noted that threats of punishment or retaliation is a federal crime in its own right and that said threats were routinely used at the Federal Prison Complex at Butner NC. The Court clearly has subject matter jurisdiction in this matter; for when

---

6  See also: Jones v. Bock #05-7058; 549 U.S. ___ (2007) - suit under 42 U.S.C, § 1983 does not require exhaustion of remedies @pg.2

a governmental body establishes an evasive and punitive atmosphere to stifle legitimate dissent, then the Courts become the only bastion remaining between a fair and just government and a totalitarian regime.

3. <u>In the Interest of Judicial Economy</u>: finally the Plaintiff suggests that it is in the interest of Judicial Economy that the Federal District Court hear this entire matter so as piecemeal litigation spread out across the country does not occur [<u>Kaufman v. Gonzalez</u>, 2006 U.S. Dist. LEXIS 40885 (D.D.C., June 16, 2006).

For the reasons as stated above the Motion To Dismiss made pursuant to defensive claim raised under FRCvP 12(b)(1) should be denied.


## PERSONAL JURISDICTION/SERVICE OF PROCESS

I. The Defendants argue that the Federal District Court of Washington DC has no personal jurisdiction (*in personam jurisdiction*) over Defendants White, Stansberry, McClintock and Holt, Jr. (the foreign Defendants) because they do not reside in the District of Columbia (DE#13, pgs.9-11). They do admit, however that this Court has personal jurisdiction over Defendants Lappin and the Federal Bureau of Prisons (DE#13, pg.7, fn.7).

They base their reasoning on the wording of the "Long-Arm" statute [D.C. Code § 13-423 (2000)] of the District of Columbia which sets the conditions necessary to establish personal jurisdiction in the Federal District Court of Washington DC and argue that said "Long-Arm" statute is controlling. The District of Columbia's "Long-Arm" Statute states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by agent, as to claim relief arising from the person's--
> (1) transacting any business in the District of Columbia;....
> (7)....
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

They then argue that "the foreign Defendants have not conducted any business in the District of Columbia." (DE#13, pg.10). To this the Plaintiff strenuously objects and adamantly disagrees and provides:

1. The District of Columbia as well as each Federal Prison, Military Base, and Federal Monument or Park; located in the territory of the United States, is deemed to be "Federal Land"; notwithstanding that said region may be within the borders of a distinct member State of the United

States. The Federal Courts have been established to deal specifically with <u>all</u> crimes or civil wrongs occurring within the territorial borders of each designated federal land unit.

2. The Federal Bureau of Prisons is a Division of the U.S. Department of Justice, which is an Agency of the Executive Branch of the U.S. Government. The seat or governing body or headquarters of all three branches of the Federal Government are located in the geographical region known as the District of Columbia or Washington D.C..

3. Each Federal Agency employs and assigns individuals to locations throughout the 50 territorial regions designated as States as well as geographical areas located outside the territorial boundaries of the United States. These individuals are deemed to be Federal Employees who are ultimately responsible to and are controlled by the Director of the Agency for which they work.

4. Federal Bureau of Prison employees are designated and sworn to be Federal Officers of the Law with special duties and responsibilities. These individuals are routinely assigned and reassigned to any State or other territorial division of the United States to perform their designated duties.

The case at bar, is a prime example of the mobility of the Federal Officers assigned to the BOP. Of the three "foreign" Defendants originally assigned to work on designated Federal Land, located within the borders of the State of North Carolina; only Defendant Richard Holt, Jr. remains in North Carolina. Defendant Stansberry is now assigned to Petersburg, Virginia and Defendant McClintock has been reassigned - first to Morgantown, West Virginia and now to Safford, Arizona. The Regional Director, Defendant White resides and works in Maryland and the BOP Agency and its Director are headquartered in Washington DC. These five (5) BOP Employee/Defendants are located in five (5) distinct federal jurisdictional districts, separated by a distance of more than two thousand miles; and may very well be transfered again during the course of this litigation.

The nexus and paramount commonality between each of these individuals are their employment with the Federal Government's Bureau of Prisons which is located in Washington DC. These individuals are in a quasi-military type chain of command which originates in Washington DC. All directives, regulations, rules, statutes, codes or other factors which govern their **business** operations and delegate their authority to act as Law Enforcement Officers are issued from Washington DC.

It cannot be denied that the Defendants are transacting business with their agency's central office located in Washington DC and therefore pursuant the the District of Columbia's "Long-Arm" Statute - personal jurisdiction is conferred.

7

The Supreme Court in <u>International Shoe v. Washington</u> 326 U.S. 310 (1945) established the basis by which personal jurisdiction can be determined. It ruled that:

> A state may exercise personal jurisdiction over an out-of-state defendant, so long as that defendant has "sufficient minimum contacts" with the forum state, such that the exercise of jurisdiction "will not offend traditional notions of fair play and substantial justice . . ." See 326 U.S. 310 (1945).

The Court further determined that jurisdiction was appropriate in this case because International Shoe Co. engaged in substantial activities in the state of Washington, enjoyed the benefits and protections of the state of Washington through the ability to sell there, and had access to Washington's courts to resolve its disputes. This ruling became the basis by which the States were allowed to create "long arm" statutes. Its main purpose was to prevent Defendants from avoiding their legal responsibilities by not being available for service of process.

Personal jurisdiction based on state long-arm statutes has been divided into two categories: general and specific jurisdiction. *General jurisdiction* exists when an out-of-state party has extensive, *systematic and continuous* dealings with the state in which the court sits. When a court has general jurisdiction over a party, the court has personal jurisdiction over any dispute involving the party. Thus, a court's general jurisdiction power is equivalent to its power based on presence within the state[7].

As in <u>International Shoe v. Washington</u> supra. (1945), the "foreign" Defendants in the instant case: have engaged in substantial activities with their Central Office, which is located in the District of Columbia (i.e. assignment and transfer orders); have enjoyed the benefits and protection of their Central Office; have access to their Central Office in the resolution of all matters pertaining to their duties and employment; and receive their salary and benefits from funds provided by their Central Office. The "minimum contact" requirements to confer *in personam* jurisdiction have been met. Furthermore there is an "enduring relationship" between each Defendant and the Central Office of the Bureau of Prisons located in Washington, DC [see: <u>Burger King Corp. v. Rudzewicz</u> 471 U.S. 462 (1985) - here the Supreme Court concluded that the Defendants: had a "substantial and continuing" relationship with the corporate headquarters of Burger King, located in Florida (forum state); were protected by the company headquarters located in the forum State; and were, therefore, subject to jurisdiction in Florida. The Court further concluded that due process would not be violated because the Defendants should have reasonably anticipated being summoned into court in Florida for breach of contract. [See also: <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980)].

---

7  http://www.kentlaw.edu/cyberlaw/docs/rfc/usview.html - "Overview of Personal Jurisdiction" - Chicago-Kent College of Law

In concluding their argument on personal jurisdiction, the Defendants claim that if the Court found that *in personam* jurisdiction existed; then they would be subjected to Due Process violations which would offend "'traditional notions of fair play and substantial justice'" (DE#13, pg.12). The Plaintiff finds it incredulous that an attempt to redress his injuries and injustices at the hands of the Defendants is somehow offending the public notion of fair play and justice. The Executive Branch of the Federal Government is omnipotent, second only to God; the Department of Justice should be investigating the acts complained of, rather than defending the cruelties committed by the Defendants, under the color and authority of Federal Law. It would be an offense against reasonableness, fair play and Justice for this Court to dismiss this cause.

*******

II. Service of Process. The 120 day time period (from filing date) to perfect service of process has not yet elapsed (deadline is June 28, 2008) therefore any complaint as to the deficiency of service should not be entertained by the Court. In the interest of Judicial Economy, the Plaintiff will show that all service was proper and complete according to the Federal Rules of Civil Procedure.

The Plaintiff disagrees and strenuously objects to the government's proposed interpretation of the Federal Rules of Civil Procedure and specifically their claim that "individual capacity" requires "at the very least" service to a Defendant's "home" (DE#13, pg.8, N.6). Nonetheless the Plaintiff has attempted to comply with this premise in an attempt to spare this Court the requisite review necessary to resolve the question. Unfortunately, given the time restraints imposed[8] and the *snails pace* by which the government releases information when it is to their advantage; it is not possible to re-issue summonses and complaints to again serve the Defendants at their homes[9]. This notwithstanding, the Plaintiff has requested this Court to re-issues summonses for Defendants Stansberry, McClintock and Holt, Jr..

The Plaintiff further strenuously objects to the government's duplicity in their attempt to sabotage this lawsuit by their failure to provide ALL addresses necessary to establish proper service, when they were requested to do so by the Plaintiff. In good faith the Plaintiff has contacted the FBOP in an attempt to ascertain the requisite addresses for Service of Process of FBOP Defendant employees so that proper service could be perfected. Specifically, the Plaintiff has: (A) written Defendants, FBOP Director Harley Lappin, and Regional Director Kim White, asking for the correct addresses of its

---

8   F.R.Cv.P: 4(m) Plaintiff has 120 days from the date of filing to perfect service.
9   The Plaintiff has submitted a renewed request for the residence addresses for Defendants sued in "individual capacities" (see: Response Motion to Dismiss: Exhibit 2)

Defendant employees so that service could be perfected; (B) e-mailed the FBOP Legal Department, as early as January 13, 2008, requesting the Defendants' addresses for the purposes of service; (C) telephoned the Legal Department and communicated with FBOP Associate General Counsel Martin Hill who was able to provide only the <u>business addresses</u> of the Defendants.

The Plaintiff avers that he has performed every action possible to obtain all information to ensure necessary and proper service on the Defendants and believes he has met the requirements as established by the Federal Rules of Civil Procedure. The Plaintiff further avers and charges the government with bad faith in its attempt to negate Service of Process to Defendants Stansberry, McClintock and Holt, Jr., for "individual capacity". From the onset of this lawsuit the government knew the capacity of each of the named Defendant parties as capacity was clearly stated in the Complaint (DE#1). Their Motion to Dismiss (DE#13 pg.8, N.6; states that Plaintiff "...did not specify in what capacity he was suing the Defendants" and therefore the FBOP did not supply Plaintiff with the resident addresses of Defentants'. This duplicity should not be tolerated by this Court.

The following rules determine sufficiency of service relevant to this cause:

<u>FRCvP:4(e)</u> Serving an Individual Within a Judicial District of the United States. - Unless federal law provides otherwise, an individual ... may be served in a judicial district of the United States by:

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

<u>FRCvP:4(i)(2)</u> Agency; Corporation; Officer or Employee Sued in an Official Capacity. -To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

<u>FRCvP:4(i)(3)</u> Officer or Employee Sued Individually. - To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Pursuant to <u>FRCvP:4(e)</u>(2)(c) and 28 USC 1391(e) Service was perfected upon all Defendants by "delivering a copy of" the summons and complaint by certified mail "to **an agent authorized by appointment or by law** (emphasis added) to receive service of process".

Pursuant to <u>FRCvP:4(i)(2)</u> "official capacity" status is conferred by serving the summons and complaint by "certified mail" to the "United States and also"..."to the agency, corporation, officer, or employee."

Pursuant to <u>FRCvP:4(i)(3)</u> "individual capacity" status is conferred by serving "the United States" and "the officer or employee under Rule 4(e), (f), or (g)."

Each Defendant was properly served pursuant to these rules and proof and affidavits of service were returned to this Court  (see: DE#s 4 to 11). The Defendants' argument of non-service has no merit as the representative **agent authorized by appointment or by law** accepted service on behalf of the Defendant.

With respect to the government's claim that Defendant Susan G. McClintock never received her copy of Summons and Complaint; the Statements and Documents provided by the U.S. Postal Service (DE#10, DE#16) indicate that service to her authorized agent (mail retrieval officer), and therefore to Defendant McClintock, was in fact perfected. The veracity of Ms. McClintock's claim of non-receipt is questionable at the least., and the Plaintiff has requested that the U.S. Postal Inspector's Office investigate the McClintock claim of non-receipt.[10]  The Plaintiff charges that the U.S. Attorney's Office should be investigating McClintock's claim of non-receipt of the summons and complaint, given the proof submitted to the Court, rather than defending it.

In any event, each of the named Defendants including, Ms. McClintock, has been properly served pursuant to the Rules as stated above; and this Court. should therefore deny Defendant's Motion to Dismiss; pursuant to FRCvP:12(b)(2); FRCvP:12(b)(4) and FRCvP:12(b)(5).

## FAILURE TO STATE A CLAIM

NOWHERE in the Defendant's Motion To Dismiss are the factual events rebutted or denied; nor are the injuries and damages sustained by the Plaintiff negated in any manner. The Defendants merely suggest that the Plaintiff failed "to state a claim upon which relief could be granted" and conclude that the Court should dismiss this lawsuit pursuant to FRCvP:12(b)(6). Clearly the wrongful denial or curtailment of the Plaintiff's liberty, raises FOURTH and FIFTH Amendment Claims; and clearer still, the deliberate failure to treat serious medical problems raises an EIGHTH Amendment claim [<u>Estelle v. Gamble</u> 429 U.S. 97 (1976)]. It is settled legal precedent that the factual allegations presented by the Plaintiff must be accepted [<u>Erickson v. Pardus</u> 127 S. Ct. @ 2200 (2007)] and

---

10 Complaint - CV # 37761398 made to Postal Officer "Gretchen" # CVF584 on May 19, 2008 (phone 1877-876-2455).

construed liberally in favor of the Plaintiff [i.e. <u>Kowal  v. MCI Communications Corp.</u>  16 F.3d 1271,
1276 (D.C. Cir,1994)].

   In <u>Brown v. the District of Columbia</u>, #05-5320 (DC Cir., 2008)  the Court of Appeals for this
District reversed the lower Courts ruling dismissing the Complaint for failure to state a claim. The facts
and circumstances of the instant case  are very similar. The Court found:

   "Brown's complaint alleges a spate of harms, which we must take as true when
   reviewing the dismissal of his claims.n2 *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)....
   Several medical personnel at the prison wrongly diagnosed Brown or ignored his requests for
   treatment. Because of these failures, Brown suffered an inflamed liver, jaundice, and a medley
   of other maladies.
   Finally, a Dr. Rafford diagnosed Brown with gallstones and ordered his immediate
   transfer to D.C. General Hospital for treatment. For the next sixty days prison officials failed to
   make the transfer while Brown continued to complain of intense pain. Not until Dr. Rafford saw
   Brown a second time, made the same diagnosis, and again ordered his immediate transfer did
   prison officials finally comply. At the hospital, Brown underwent surgery that removed
   eighteen gallstones blocking his urinary tract. After he returned to the Lorton prison, Brown
   continued to complain of similar symptoms. Over the next several months, the prison's medical
   staff again refused to treat him or wrongly diagnosed his condition. In one instance, a medical
   assistant diagnosed food poisoning and ordered Brown's transfer to a hospital, but prison
   officials again refused." @ pgs.3-4.

   "One example of such 'deliberate indifference' is a prison doctor or official who 'intentionally
   den[ies] or delay[s] access to medical care or intentionally interfere[s] with the treatment once
   prescribed'" @ pg.7.

   "Brown also avers facts sufficient to hold the District liable under *Monell* because he alleges
   that the District failed to act even though it "knew or should have known of the risk of
   constitutional violations." *Baker*, 326 F.3d at 1307. Brown claims that he filed numerous
   grievances, Compl.¶¶ 36, 42, and that "the District of Columbia sat idly by while the plaintiffs
   serious medical needs were ignored after plaintiff had informed them of his medical needs," *id.*
   ¶ 38.6 As this court interpreted *Monell* in *Baker*, 326 F.3d at 1306, these allegations are
   sufficient to state a claim that a custom or policy of the municipality caused the underlying
   constitutional violation." @ pgs 9-10

The Court reversing and  finding in <u>Brown v. D.C.</u> , supra. (2008) that there was in fact an Eighth
Amendment claim.[11]


   In the instant case the Defendants:

* failed to treat the Plaintiff for HVC, after numerous requests to do so;

* locked the Plaintiff in the SHU for no acceptable reason for almost six months;

---

11 The Court also overruled  a "failure to serve" defense.

* failed to properly care for the Plaintiff's diabetic condition;

* forced the Plaintiff to do standing work, notwithstanding a Doctor's recommendation not do so;

* forced the Plaintiff to hobble to appointments at the FMC from the SHU, while handcuffed and chained to an inmate "chain gang,"

Each event:

* occurring in flagrant disregard to the Plaintiff's serious medical conditions;

* resulting in serious and painful injury to the all ready debilitated Plaintiff;        and,

* occurring notwithstanding the Plaintiff's pleas for help and proper medical treatment.

Furthermore, the acts complained of denied the Plaintiff 3 months of statutory release time and imposed drastic liberty restrictions on the Plaintiff for nearly six (6) months.

The above acts in violation of the Fourth, Fifth and Eighth Amendments of the U. S. Constitution.

The factual allegations presented by the Plaintiff have neither been rebutted nor denied by the Defendants; as such the Defense Motion to Dismiss pursuant to FRCvP:12(b)(6) - failure to state a claim - should be denied.


## VENUE

The Defendants argue that venue in this Court is not proper and state that:

1. "The private interests weigh in favor of transferring."

(A) "Plaintiff's choice of Forum deserves little deference because he does not reside in this District, and because the District lacks any ties to the controversy";

(B) "Defendant's choice of forum.... Defendant has legitimate reasons for seeking transfer." -. the acts complained of occurred in Butner NC and the "prison is there, all of the relevant witnesses are there; and the sources of proof are there";

(C) "The claims arose elsewhere, the convenience of the parties and witnesses, and the access to the sources of proof."

2." The public interests weigh in favor of transferring the case."

To these arguments the Plaintiff responds that:

1. Private Interests:

(A) The Plaintiff's choice of venue is proper as the Federal Bureau of Prisons and its Director Harley G. Lappin are named first and second Defendants in this cause. This Court has ruled in

<u>Dominguez v. Bureau of Prisons</u>, #05-2242(GK) - (D.D.C.,2006); where the prison in controversy was also at Butner NC; and has stated that:

> "Defendants also move to dismiss based on improper venue. A civil action against an agency, officer, or employee of the United States may be brought in any judicial district in which (1) the defendant resides; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) where the plaintiff resides. 28 U.S.C. § 1391(e). **One of the defendants, the BOP, is headquartered in the District of Columbia.** *See Shorter v. Lappin*, **2006 WL 752932, at \*3 (D.D.C. March 21, 2006). Therefore, venue is proper here.**" (emphasis added).

Furthermore the Plaintiff charges that the aggrievous acts complained of in this lawsuit and the inhuman treatment suffered by the Plaintiff at the hands of the Defendants sued in "individual capacity"; need to be exposed, and brought to the attention of the highest levels of this nation's government; so that these types of cruelties are no longer tolerated in this country.

The Butner Prison Complex, located in Butner NC, is a medical prison complex where the majority of prisoners are sick and/or disabled. The Butner complex consists of a Federal Medical Center (FMC or hospital), a FPC (camp), a FCI-Low Security, a FCI-Medium Security and an FCI-Medium/High Security. The FMC houses seriously ill inmates and those inmates with chronic illnesses/ disabilities. It is medically staffed and maintained by medical personnel from the **Public Health Service**. The responsibility for the well being of the prisoners is bifurcated between the Defendant, Federal Bureau of Prisons and a separate government entity, a division of the Uniform Services, the Public Health Service. The commanding officer of the Public Health Service is the Surgeon General of the United States. This Court should exercise jurisdiction as each of the two distinct government agencies are headquartered in, or near, Washington DC; and the employees of each of these agencies are directly connected through a chain of command to their respective agency head and central offices. Furthermore each employee is subject to transfer to another federal district at any time.

In (B) and (C) of their argument, the Defendants state as a primary reason for their preference to transfer this lawsuit to the Eastern District of North Carolina is that all of the relevant witnesses are in Butner NC. This is simply not the case and the Plaintiff has shown that the primary witnesses, Defendants Stansberry and McClintock, are no longer located in North Carolina. Defendant Stansberry is now stationed in Virginia, while Defendant McClintock is stationed in Arizona.

2. The Public Interests:

The Defendants argue that it is in the public interest that this case be transfered to North Carolina. To this the Plaintiff responds that the public interest is best served by this Court's review of

14

the facts and circumstances of this Civil Rights Lawsuit. Public scrutiny is more apt to occur in the District of Columbia, as it is the seat of our Federal Government. Here, in the District of Columbia, the light of such public scrutiny would illuminate the acts of injustice and cruelty perpetrated by the Defendants at the Butner Prison Complex; where inmates are routinely left to die because treatment for Hepatitis C (HVC) is deemed too expensive[12]. This deliberate indifference to proper health care "shocks the conscience" and is repugnant to the evolving standards of decency expected in the United State of America. The Public Interest is best served by venue in this honorable Court.

Furthermore, the Public Health and therefore the Public Interest is best served when those in the custody of the Federal government are treated for infectious disease. To allow an inmate to fester with a deadly disease without providing available treatment is an affront against the Public Health. Federal prisoners are eventually released throughout this Country and former inmates who have not been treated become a public health danger to the citizens of this Country. This should not be tolerated.

Finally, the Defendants' argument that this Court has twice[13] the number of Civil cases docketed than in the Eastern District of North Carolina; is offset by the number of Judges found in the respective Districts. The Defendants fail to inform the Court that there are 16 Judges (1:246 ratio) in the Federal District for the District of Columbia and only 6 Judges (1:306 ratio) serving the Eastern District of North Carolina[14]. Given the ratios of Federal Judges to civil case loads, this Defense argument is deceptive and therefore without merit. The burden upon the Eastern District of North Carolina would be greater.

The Defendants' arguments, that the Plaintiff's claims: are "individualized and of no national import"; and "do not serve the public interest"; fail in the light of the above.

This Court has proper venue for the reasons as stated. The Defendants' Motion to Dismiss, pursuant to FRCvP: 12(b)(3) - Improper Venue; and their alternative Motion to Transfer this Cause to the Eastern District of North Carolina, should therefore be be denied.

---

12 The Plaintiff affirms that while incarcerated for 10 months at the FMC he was housed with at least a dozen inmates who were not given treatment for HVC; he further affirms that during this time period several of the inmates were reported to have died from the disease. The Plaintiff was verbally informed by Dr. Rameriz (sic), the Camp Physician at Seymour-Johnson FPC, that HVC treatment was just too expensive.

13 District of the District of Columbia - 3,936 civil cases, compared to Eastern District of North Carolina - 1,840 civil cases docketed between October 1, 2006 and September 30, 2007 (DE#13, pg.19).

14 Number of Judges obtained from the respective website (http://www.dcd.uscourts.gov/judge-info.html & http://www.nced.uscourts.gov/#) of the Federal Court Districts compared.

OTHER DEFENSES RAISED

1. The Question of Immunity - the Defendants argue that they are exempt from prosecution under this <u>Bivens</u> type civil rights lawsuit because "Qualified Immunity" protects them in their "Individual Capacities" and "Sovereign Immunity" protects them in their "Official Capacity". The Plaintiff disagrees and argues that these immunities are waived and/or not applicable through the "concept of reasonableness", the common law, statute, and legal precedent.

The majority of legal precedent handed down by the Courts with respect to Civil Rights violations by "agents acting under the color of law" deal with State actors and involve the use of Title 42 U.S.C. § 1983. <u>Bivens</u>[15] type civil rights lawsuits deal with Federal "employees/agents" acting under the color of Federal Law. The Courts have determined that the legal precedent concerning either civil rights action is interchangeable and thus the reasoning presented in a § 1983 case can be properly applied to a Bivens case. [See: <u>Butz v Economou</u>; 438 U.S. 478, 503-04 (1978)].

The Doctrine of Qualified Immunity is Not Applicable

The crux of an argument invoking qualified immunity in a Bivens action, supposes that the Federal Defendant, at all times, acted reasonably and in good faith; and that the Plaintiff's constitutional rights were not violated and therefore there is no cause of action.

The Plaintiff responds that Qualified Immunity is stripped from a Defendant Federal Employee/ Agent when it can be shown that they have acted in bad faith and/or with deliberate indifference to the well being of the Plaintiff. The instant <u>Bivens</u> civil rights lawsuit implies deliberate bad faith/illegal acts and/or omissions on the part of the Defendants to violate several of the Plaintiffs <u>established and identifiable</u> rights guaranteed by the U.S. Constitution (1st[16], 4th, 5th, and 8th Amendments).

Specifically, the Plaintiff charges that, among other things, a fraudulent "Incident Report" was issued by Defendant Holt, Jr. on the Direct Order of Defendant McClintock [see: <u>Benefield v. McDowall</u> 242 F3d 1267 (CA10, 2001)]. That Warden/Defendant Stansberry directly involved herself in ensuring the the Plaintiff would remain locked in the SHU (see: EX. 1: Plaintiff's Affidavit); and was personally informed by the Plaintiff, several times, that his medical condition was deteriorating: in that his legs were being damaged; that he was not receiving treatment for HVC; and that his diabetes

---

15 Victims of constitutional violations by federal employees or agents may maintain so-called *Bivens* claims for damages, despite the absence of any statute specifically conferring such a right. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* , 403 U.S 388, 390-97 (1971).

16 The denial of Administrative Remedies as presented above details the 1st Amendment violation.

treatment was not effective [see: Egebergh et al. v. Nicholson et al. 272 F.3d 925 (CA7, 2001)]. Warden Stansberry, with deliberate indifference did nothing.

It is is inherent in the claims presented that a finding of either deliberate indifference or other bad act, on the part of the federal Defendants, would automatically establish the conditions by which Qualified Immunity is devested.

> "Qualified immunity shields government officials from civil liability `insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. '" Trulock v. Freeh, 275 F. 3d 391, 399 (4th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U. S. 800, 818 (1982)). Unpublished CA4 No. 04-1822 Arkansas Chronicle et. al. v. Murphy et. al."

> "Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U. S. 335, 341 (1986). It protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." Maciariello v. Sumner, 973 F. 2d 295, 298 (4th Cir. 1992). Thus, government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U. S. 800, 818 (1982). In analyzing an appeal from the rejection of a qualified immunity defense, our first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct. See Taylor v. Waters, 81 F. 3d 429, 433 (4th Cir. 1996). We then ask whether the facts, viewed in the light most favorable to the plaintiff, demonstrate such a violation. c.f. [Waterman v. Batton (CA4-02-1725-CCB @ pg. 6; (2004)].

As the instant lawsuit clearly details such wrongdoings on the part of the Federal Defendant/Actors sued in their individual capacities, there cannot be a valid finding of Qualified Immunity unless there are findings of good faith and/or no wrongdoing on the part of the Federal Defendant/Actors; and  that **no** recognizable constitutional violation did occur.

### The Doctrine of Sovereign Immunity Is Not Applicable

The concept of Sovereign Immunity has evolved from our English ancestry and its body of Common Law - or "the body of law that derives its force and authority from the universal consent and immemorial practice of the people." It is the "system of jurisprudence that originated in England and which was latter adopted in the U.S. that is based on precedent instead of statutory laws.[17]" Sovereign Immunity was the accepted tradition in the **monarchy** form of government of England; that the "King" or sovereign could do no wrong. It has been described as:

> "one of the most dangerous concepts to freedom. And the larger and more powerful governments become, the more sovereign immunity becomes a black hole where citizens' rights

---

17 Lectric Law Library @ http://www.lectlaw.com/def/c070.htm

can vanish.... The essence of sovereign immunity is that "the king can do no wrong." But as New York University law professor Jeremy Travis noted, "The oldest purported rationale for the immunity of the sovereign ... is a perversion of its historical intent, which was that the king was privileged to do no wrong." As one English lawyer explained in the wake of James II's fall, "When a king ... does wrong, he thereby ceases to be king.... God and the law are above the king." But in the contemporary statist interpretation, a phrase intended to prevent kings from injuring subjects becomes a license for government abuses of the citizenry."
[See: The Future of Freedom Foundation - Freedom Daily -"Government's License to Inflict Injustice" by James Bovard, March 2003 @ http://www.fff.org/freedom/fd0303d.asp].

The application of a rule established in, and specific to a ruler of, a **monarchy** therefore should not be allowable in and to our **Republic** which is guaranteed to us by the Constitution of the United States. The concept of "sovereign immunity" should be deemed an unconstitutional premise; as *Article I, Section 9(8)* specifically bans titles of nobility. It would be adverse to the principles of the Constitution to ban the title of King without banning the privileges afforded to the King by merely substituting another name. The Plaintiff charges that the concept of sovereign immunity is an ancient relic afforded to Kings and their monarchical form of government; it is therefore unconstitutional and should not be allowed to function in this Republic of the United States of America; by granting the government a blanket shield of immunity to protect its wrongdoers.

The government contends that "Plaintiff's Complaint does not contain any colorable basis for such a waiver, nor is there one in fact." (DE#13, pg.13). The Plaintiff argues that sovereign immunity is waived in suits against the government and its agencies by application of the <u>Tucker Act</u>, the <u>Westfall Act</u> and the <u>Administrative Procedures Act</u>[18] as well as the <u>Federal Torts Claim Act</u>[19].

(A) Sovereign Immunity is waived in all Tort Actions taken pursuant to the <u>Federal Tort Claims Act</u> (FTCA) - 28 U.S. Code § 2679 . The FTCA allows individuals to recover against the federal government for personal injury, wrongful death, and property damage caused by the negligence of a federal employee, acting in the scope of his/her employment.

In the analysis of this waiver of sovereign immunity it should be noted that the FTCA **does not create a new cause of action** but provides for the acceptance of liability by the U.S. for the misconduct of its employees when such misconduct constitutes an actionable wrong.... See: <u>Indian Towing Co. v.</u>

---

18 The Plaintiff hereby invokes the authority of the *Tucker Act, the Westfall Act (*1988 Amendments to the FTCA @ 28 USC § 2679*)* and the *Administrative Procedure Act* as a basis of waiver of sovereign immunity and requests the right to Amend his Complaint to include these acts  or any other applicable act, if deemed necessary by this Court.
19 The Plaintiff instituted and expanded this Bivens type lawsuit to include the Tort Claim filed by the Plaintiff and subsequently denied by Regional Counsel for the Bureau of Prisons.

U.S. 350 U.S. 61 (1955). The Plaintiff argues that the Supreme Court by use of this language explicitly recognized an inherent waiver of any governmental immunity when there is a constitutional wrong.

(B) In the Bivens constitutional tort context, immunity for Federal Officers also has been extended but its scope is limited to qualified (immunity) .... See: ISBN # 0831808659 Litigation with the Federal Government § 5.07 (d)(1), by Gregory Sisk et al. (2006) @ pg. 382. The Defendants raise FDIC v. Meyer 510 U.S. 471 (1994) in support of their premise of sovereign immunity. The Plaintiff argues that the Meyer case differs from the case at bar as the Supreme Court found that a Bivens action filed solely against a government agency was not allowable. The instant case names the federal agency as well as five (5) human entities who work for the specified agency. The reasoning by which the Court rejected the Biven's action in FDIC v. Meyer supra. (1994) should not be held applicable here.

It has long been held that the government is equated to that of a private person and therefore is allowed liability for a tort in the same manner and to the same extent as a private individual under like circumstances [Feres v. U.S. 340 U.S. 135 (1950); see also language of 28 U.S.C. 1346(b)(1)[20]]. Furthermore, it is important to note that the concept of sovereignty as applied to government was a privilege afforded to the government; when the acts complained of which caused the injury; occurred by the wrongdoing of government officials, in the course of official duties, which no other entity could perform. This concept no longer has merit with respect to the Federal Prison System; because several private corporations now contract with and maintain "private prisons" for federal offenders, who are housed in areas where the private entity operates. [Indian Towing Co. v. U.S. supra. (1955)].

Finally, it should be noted that in Nixon v. Fitzgerald 457 U.S. 731, 744-758 (1982) the Supreme Court ruled that only the President has absolute immunity- executive officers are only entitled to qualified immunity.

The Bivens action should be allowed when direct action against the government is not available. It can be safely argued that Civil Rights Lawsuits, against federal government employees are allowable when brought through a Bivens action when constitutional violations are alleged. See: Litigation with the Federal Government § 5.07(d)(2).

(C) The Defendants argue that the Plaintiff sued the named Defendants in their official capacities based solely on their status as government officials. The Plaintiff charges that he has named the Agency (BOP), its Director (H. Lappin) and Regional Director (K. White), not only on their status

---

20 the district courts ..., shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant....

as government officials; but also because they failed and/or ignored the Congressional mandates which govern the functioning of the federal prison system. As such, and because of their failure to enforce or implement the Congressional mandates which govern the operation of the Federal Bureau of Prisons; they are liable for suit in their "official capacity". Those Defendants who were directly involved in the acts and/or omissions resulting in the injuries done to the Plaintiff are also liable in their "individual capacity".

*Title 18 U.S. Code § 4042* establishes the duties of the Federal Bureau of Prisons and in pertinent part states:

> a) In General. - The Bureau of Prisons, under the direction of the Attorney General, shall -
> 1) have charge of the management and regulation of all Federal penal and correctional institutions;
> 2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
> 3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

*28 CFR § 500.1(a)* defines the Warden :

> The *Warden* means the chief executive officer of a U.S. Penitentiary, Federal Correctional Institution, Medical Center for Federal Prisoners, Federal Prison Camp, Federal Detention Center, Metropolitan Correctional Center, or any federal penal or correctional institution or facility. *Warden* also includes any staff member with authority explicitly delegated by any chief executive officer.

In U.S. v. Ellis, No. 07-1997 (CA1) it was held that:

> Congress has delegated to the Bureau of Prisons, under the direction of the Attorney General, "the management and regulation" of all correctional institutions, 18 U.S.C. §4042(a)(1), including the "**protection** . . . of all persons charged with or convicted of offenses against the United States," id. § 4042(a)(3).... three regulations promulgated pursuant to this statutory authority: one authorizing the **Director of the Bureau of Prisons to ensure the proper functioning of the prison, including safety**, 28 C.F.R. § 0.95; one designating the warden as the "chief executive officer" of the prison (and thus **establishing the warden as the designated agent of the Director of the Bureau of Prisons)**, id. § 500.1; ... (emphasis added).

It is clear that by the Congressional authority granted to the Bureau of Prisons, its Director, its Regional Directors, its Wardens, and its Correction Officers; they are bound by law to perform the duties empowered to them. The Plaintiff argues that a failure to perform "official" acts mandated by Congress confers liability in an "official capacity".

The Plaintiff has shown that as all Defendants have acted outside their constitutional limitations, and therefore have lost their umbrella of sovereign immunity[21], if indeed such protection did exist through constitutional authority, in the first place. Finally, the Plaintiff will offer the words of Justice Louis Brandeis from his opinion in (United States v. Olmstead, 277 U.S. 438 (1928):

> "Decency, security and liberty alike demand that government officials shall be subjected to the rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for the law, it invites every man to come a law unto himself. It invites anarchy.

2. *Respondeat Superior* - the Defendants argue that the Plaintiff attempts to use the doctrine of *Respondeat Superior* to confer liability upon Defendants Lappin, White and Stansberry; and that *Respondeat Superior* is precluded from use in Civil Rights Lawsuits such as Bivens and 42 USC § 1983 actions. The Defendant agrees in part, that liability of the employer, strictly through the *Respondeat Superior* doctrine is not allowable in Civil Rights suits; unless it falls within one of the Court recognized exceptions.

Prior to an examination of these recognized exceptions and their application to the Defendants; the Plaintiff states that Defendant Stansberry has been named in her "individual capacity" as well as "official capacity" because of her direct actions and/or inactions which contributed to the constitutional wrongs complained of in this lawsuit. Plaintiff's Affidavit, attached as Response Exhibit 1, affirms the direct involvement of Defendant Stansberry. Briefly, Warden Stansberry, in a personal and direct manner: refused to answer informal resolution forms, thereby stopping all administrative remedies in violation of the CFR[22]; was less than truthful in her letter to Congressman Jones, as there was no exercise available to disabled inmates; verbally denied relief when requested by Plaintiff in weekly "walks" through the SHU; routinely lied to the Plaintiff; and ignored Plaintiffs request to provide crucial evidence for his Disciplinary Hearing, thereby extending unnecessarily, confinement time in the SHU. Warden Stansberry is therefore not entitled to any defense under the doctrine of *Respondeat Superior.*

---

21 *Litigation With The Federal Government supra.* @ *§ 2.02(b)(5)*

22 §542.13(a) *Informal resolution.* Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. **Each Warden shall establish procedures to allow for the informal resolution of inmate complaints.**

With respect to Defendant/Director Lapin and Defendant/Regional Director White the Plaintiff responds that *Respondeat Superior* is applicable in this Bivens Civil Rights Lawsuit if direct involvement can be demonstrated; or an exception to the preclusive rule is met.

An analysis of the pertinent case law, by which the use of the doctrine of *Respondeat Superior* is precluded from use in Civil Rights Lawsuits; indicates that this preclusive bar developed from the Supreme Court ruling in Monell v. New York City Department of Social Services 436 U.S. 658 (1978). The Monell Doctrine, as it became known, evolved from a 42 U.S.C. § 1983 civil rights action where it was decided that municipal employers could not be held liable for the constitutional wrongs committed by an employee(s). As discussed previously, the Court made rules established through 42 U.S.C. § 1983 civil rights suits against "state actors"; were used interchangeably with Bivens type cases against "federal actors" [see: Butz v Economou; 438 U.S. 478, 503-04 (1978)]; and thus Monell became the deciding factor in denying claims of *Respondeat Superior* liability in subsequent § 1983 or Bivens type suits[23]. In 1989, the Supreme Court provided an exception to the Monell Doctrine, and stated in City of Canton, Ohio v. Harris  489 U.S. 378 (1989); that municipalities would be held liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train its employees, if such failure results in the deliberate indifference to a constitutional right (see: Canton @ 385-392).

It is firmly established that the failure to treat serious medical conditions is deliberate indifference and violative of the Eighth Amendment [see: Estelle v. Gamble 429 U.S. 97 (1976)]. The failure of the Defendants to treat the Plaintiff for Hepatitis C  reflects a failure to properly train staff and results in deliberate indifference to the Plaintiff's serious medical needs. The Plaintiff argues that the Canton exception to *Respondeat Superior* liability has been met and Defendants Lappin and White are therefore liable.

Furthermore, the Fourth Circuit in Shaw v. Stroud 13 F.3d 791, 798 (CA4, 1994) has recognized an additional supervisory liability, stating:

> "The principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for constitutional injuries inflicted by their subordinates.... In Slaken v. Porter 737 F.2d 368 (CA4, 1984) we reasoned that liability is not premised upon '*respondeat superior*' but upon 'a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a causative factor in the constitutional injuries they inflicted on those committed to their care.'"

---

23 *City of Oklahoma City v.Tuttle* 471 U.S. 808 (1985).

Still further, the Bureau of Prisons and its Director and/or Regional Director have established a "policy or custom" whereby inmates infected with the Hepatitis C virus are left to fester and die; with treatment, although available, rarely dispensed. This "policy and custom" need not be expressed, but "may be inferred from acts or omissions of a municipalities' supervisory officials serious enough to amount to gross negligence or deliberate indifference." See: <u>Villante v. NYC Department of Corrections</u> 786 F2d 516, 519 (CA2, 1986).

Finally the Plaintiff provides that Defendants Lappin and White and Stansberry have failed to fulfill their official duties as provided in 18 U.S. Code § 4042, 28 CFR § 542.11 and 28 CFR § 542.13; and that their failures allowed the Plaintiff's constitutional injuries to occur.

## CONCLUSIONS

The Defendants' Motion to Dismiss or Transfer should be denied in its entirety for the reasons as stated above. This Court should maintain venue and this case should be allowed to proceed to Discovery as the Plaintiff has shown that:

1. This Court has Subject Matter Jurisdiction;
2. This Court has Personal Jurisdiction;
3. Service of Process for each Defendant has been completed pursuant to the Rule of Civil Procedure;
4. Constitutional Claims, for which relief can be granted, have been properly presented;
5. Venue in this Court is Proper;
6. The Defendants are not entitled to Qualified Immunity;
7. The Defendants are not entitled to Sovereign Immunity;
8 The Doctrine of. *Respondeat Superior* has not been misused.

WHEREAS: PAUL SCINTO, SR., PRO-SE PLAINTIFF, has presented the facts and argument necessary to support his Complaint; the Plaintiff prays, that this honorable Court deny the Defendants' Motions in their entirety.

Respectfully Submitted,

this the 28th day of May, 2008; by:

Paul Scinto, Sr., Plaintiff Pro-Se

VERIFICATION

Plaintiff swears under penalty of perjury, that to the best of his knowledge and belief, the contents of this pleading are true and correct. This the 28th day of May, 2008; by:

Paul Scinto, Sr.

CERTIFICATE OF SERVICE

Plaintiff has served a copy of his "Response & Objections To: 'Defendants' Motion To Dismiss...", by first class mail, with correct postage affixed; on the 28th day of May, 2008; to: Christian A. Natiello, A.U.S.A. (for Defendants); U.S. D.O.J. - Civil Division, 555 FOURTH Street, N.W.; Washington D.C. 20530

Paul Scinto, Sr.; Plaintiff
404 Hoke Street
New Bern, NC 28560
Telephone 252-638-5886

24

# RESPONSE EXHIBIT 1

## AFFIDAVIT OF PAUL SCINTO, SR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CASE NO. 1:08-CV-0361-PLF

| | | |
|---|---|---|
| PAUL SCINTO, SR., | ] | |
| | ] | |
| PLAINTIFF; | ] | |
| | ] | AFFIDAVIT OF |
| VS. | ] | |
| | ] | PAUL SCINTO, SR. |
| FEDERAL BUREAU OF PRISONS, et al. | ] | |
| | ] | |
| DEFENDANTS. | ] | |
| ---------------------------------------------------------------] | | |

Paul Scinto, Sr. affirms, under the penalty of perjury the following statement to be true and correct.

1. On or about October 18, 2002, I self-reported to Seymour-Johnson Federal Prison Camp (FPC) to begin a term of incarceration. At the medical interview I informed the Doctor of my multiple medical problems and requested treatment for my leg and Hepatitis C. My leg was allowed to fester ans swell and on December 25, 2002 - a hole in the upper thigh opened and purulence and blood spewed out.

2. On December 26, 2002 I was taken to Lenoir Memorial Hospital where I received emergency surgery; and on or about January 22, 2003 I was transfered to the Federal Medical Center (FMC) at Butner NC for follow up treatment and additional surgery. During my stay at the FMC, I repeatedly requested treatment for Hepatitis C. These requests were ignored and/or refused without explanation; and on December 10, 2003 I was returned untreated to the FPC at Seymour-Johnson.

3. After several months of verbally requesting treatment for Hepatitis C from the medical staff, I submitted a "BP - A148.005 Form - Request To Staff" (Affidavit Exhibit 1) asking for a Medical Furlough to obtain treatment. This Request was never answered in writing. I discussed the lack of treatment with Ms. Brewer the Case Manager who told me to wait until I was transfered to the Medical Camp because the FPC was closing.

# RESPONSE EXHIBIT 1

4. On June 6, 2005, I was transfered to the Medical Camp located at the Correctional Complex in Butner NC. Patricia Stansberry was the Warden in charge of this Prison Camp facility and Susan G. McClintock was the Camp Administrator.

5. While at this location:

* I was forced to do non-sedentary work notwithstanding an orthopedic doctor's (Dr. Stanley) recommendation not to do so (Affidavit Ex. 2);

* I was not provided with safety equipment recommended by the safety officer (Off. Crogan) (Affidavit Ex. 3);

* I was not provided with treatment for Hepatitis C or several other medical problems (Affidavit Exs. 4 to 10) and the Requests To Staff were never answered;

* I was not provided with medical and legal documentation necessary to pursue and utilize Administrative Remedies (Affidavit Exs. 11 to 13) and the Requests To Staff were never answered;

* written "Requests to Staff" (BP - A148.005) or "Cop-Out Forms" submitted to Staff were routinely ignored;

* written and oral complaints made to Warden Stansberry and Camp Administrator McClintock were routinely ignored;

6. On August 24, 2005 I was issued a "Severe Incident Report" (DE#1, Ex.3) and confined to the Special Housing Unit (SHU), on the direct Order of Camp Administrator Susan G. McClintock; to Officer Richard Holt, Jr.. While confined in the SHU:

* I was never given a full hearing;

* I was denied a proper diabetic diet and exercise;

* I was denied treatment for Hepatitis C;

* I received NO written answers on several "Requests To Staff" submissions as attested to my "LOG" attached hereto as Affidavit Exhibit 14 to 20;

* I was denied access to the Administrative Remedy Forms: BP9 or BP10 by the Unit Counselor and/or Case Manager; Assistant Wardens and Warden Stansberry; and was therefore forced to write my Congressman (Walter B. Jones - Affidavit Exhibits 21 to 25) to investigate the Constitutional violations complained of.

# RESPONSE EXHIBIT 1

7. On November 18, 2005, I prepared a Statement for submission to the Disciplinary Hearing Officer (DHO) - attesting to the facts and circumstances surrounding my conditions of confinement, medical problems, denial of Administrative Remedies, and the circumstances surrounding the Incident Report. This Statement with all attachments is attached hereto as Affidavit Exhibit 26.

8. On February 10, 2006 I was released from the SHU and told that the Incident Report was "thrown out";

9. On or about April 24, 2006 I was transfered to FPC at Cumberland MD.


VERIFICATION: Plaintiff swears under penalty of perjury, that to the best of his knowledge and belief, the contents of this Affidavit are true and correct. This the 20th day of May, 2008; by:

Paul Scinto, Sr.
404 Hoke Street
New Bern, NC 28560
Telephone 252-638-5886


# RESPONSE EXHIBIT 1

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) MR. Putnam HEALTH SERVICE Admint. | DATE: August 20, 2004 |
|---|---|
| FROM: PAUL SCINTO | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: Compound | UNIT: M-B (02) |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Please approve a medical furlough so that I can discuss with my civilian doctor (Philip Bournous M.D, New Bern, NC) my treatment for Hepatitis C. Prior to my incanceration I was scheduled for Treatment (22 months Ago). Since my incancer-ation I have not been treated, nor given any indication when treatment might start. Thank You.

*Paul Scinto Sr.*

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)          This form replaces BP-148.070 dated Oct 86
                                              and BP-S148.070 APR 94

A Ex 1

CONSULTATION REPORT

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| **Name:** SINTO, Paul<br>**Reg. #:** 18933-004<br>**DOB:** | **Referred By:** LSCI Butner<br>**Consultant:** STANLEYMD |
|---|---|

| Chief Complaint:<br>🖐 | |

| Date of Visit: 07-06-05 | Dictation Received: 07-07-05 | Dictation Transcribed: 07-07-05 |

## CONSULT ⇨ ORTHOPEDICS

**SUBJECTIVE:**
Mr. Sinto comes to clinic today for evaluation of bilateral knee pain. He has a pretty long history, he is a diabetic and has hepatitis C. He was in an accident in 1979 and sustained fractures of both knees. In regards to the right knee, he eventually underwent a right total knee arthroplasty in June 2002 by Dr. Armistead in New Bern. He had immediate postoperative infection. He had two surgical débridements following the infection. The components were left in place. He thinks he was placed on p.o. antibiotics but may have received some IV antibiotics. The antibiotics were stopped in September. He became incarcerated in October. His knee subsequently began to swell and he developed what he describes as an obvious abscessed pocket with extension almost through the skin. In 12/02 this was débrided by Dr. Classen in Kinston. He was placed on intravenous antibiotics for apparently four months. He tells me that the infection could not be eradicated and in April 2003 he saw Dr. Summers here at the FMC Butner. Dr. Summers took his back to the OR and he underwent another operative débridement. He apparently had some persistent infection. Initially this appeared to grow out a coag-negative staph which was sensitive to Ancef. He has had subsequent cultures which reveal that it was resistant to Ancef and he was placed on Zyvox and subsequently converted over to p.o. Bactrim. He was taking 1 double strength tablet b.i.d. At this point, according to some of the notes that we have from Dr. Ramirez, the goal was simply to suppress the infection. He also underwent Gentamycin injections into the knee joint. He says he had approximately 6 of these. Throughout this treatment he actually did improve and was feeling quite well and apparently the antibiotics were discontinued in January 2005. He does have some pain in the right knee. He says it doesn't feel like it did when it was infected however. It is generally worse with ambulation. When he had his infection he said it would swell tremendously. He has not had that type of swelling and denies any fevers or chills currently. He has been noted to have instability of the knee with a dysfunctional medial collateral ligament. He says this developed after the infection. He's been provided a hinged knee brace for this which he wears periodically. His biggest complaint as regards the brace is that it tends to slide down.

Regarding his left knee, this was injured with the initial incident in 1979. He apparently had a plate for what sounds like a distal femur or supracondylar fracture. This was ultimately removed. He did have subsequent knee arthroscopy in the early '90s with drilling. He has not had any surgery since then. He does complain of predominantly medial sided left knee pain.

**PHYSICAL EXAM:**
There are multiple scars involving the right knee. He actually has quite good range of motion from 0° to approximately 110°. He has obvious instability of the medial collateral ligament. The lateral collateral ligament is intact and there is no AP instability. There is really not much in the way of warmth, swelling, or redness. There is some very mild diffuse tenderness which really is quite mild.

The left knee reveals good range of motion with mild varus. He has no instability of the lateral collateral ligament. He does open up medially but seems to have a good endpoint. There is no AP instability.

**X-RAYS:**
He had previous x-rays done in November and December 2004. The right films show total knee replacement. There is a little bit of a lucent line beneath the medial plateau although this could certainly be postop. I don't see any other evidence of loosening of the components or obvious infection. He's had films of the left knee as well which demonstrated near bone on bone contact in the medial compartment with changes in the femur consistent with previous fractures and surgery. There are tricompartmental arthritic changes.

**IMPRESSION:**
57 y/o male with diabetes, hepatitis C, right total knee arthroplasty in 2002 complicated by infections requiring multiple washouts and ultimately attempts at suppression of the infection with antibiotic knee injections in Gentamycin and oral medications, now off all antibiotics since January 2005. I guess the question remains whether or not this is still infected. He says it doesn't feel like it did when it was infected. Clinically it does not appear to be infected. His last x-rays were in December and did not show obvious evidence of loosening or infection.

*(continued)*

A Ex. 2

SINTO, Paul
18933-004

July 6, 2005
Page 2

**DISPOSITION:**
I would like to go ahead and repeat his sed rate, c-reactive protein, and CBC to see if these are elevated or not. I'd also like to repeat the x-rays of his right knee to see if there is any evidence of loosening. This could be evaluated additionally with a knee aspirate or an Indium scan. He said that the last two aspirates were negative, although these were done when he was receiving the injections of Gentamycin.

In regards to his left knee, he has advanced arthritic changes here. His nonoperative treatment options include Tylenol or antiinflammatory medications but those may be contraindicated in this patient with liver problems. They include cortisone shots and Hyaluronic acid injections. Cortisone may or may not be an option given his diabetes and the propensity for this to increase the blood sugar. Definitive management would be a knee replacement procedure. Certainly we would need to ensure that the right knee was not infected before we could give any consideration to doing any sort of left knee replacement procedure.

Although he does have pain in both knees, he finds if he is not required to stand or walk for long periods of time it is something that is tolerable for him. The biggest issue does seem to be his work requirements. I certainly think it's reasonable that he be permitted to do only sedentary work if possible in that he should avoid any prolonged standing or walking. We then discussed his brace. I told him he might consider strapping the brace to his belt to prevent it from moving downward. I'd also like him to see the physical therapist to go over some strengthening exercises for his knee on the right side. On the left, I'd like to get scanning x-ray to assess the degree of arthritic changes and see if they've progressed over the past six months.

In summary, I'd like to check a sed rate, c-reactive protein, and CBC and obtain standing knee films of both films. He is to follow up in the orthopedic clinic once these are available for review. I'd like for him to see the physical therapist to start some strengthening exercises with the right knee. I think he should do only sedentary work and should avoid prolonged standing and walking. The patient has been educated regarding the condition and treatment plan and voiced understanding.

Signature:

SAMUEL DAVID STANLEY, M.D.

SDS/th

*Preliminary report until signed.*

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                        FEDERAL BUREAU OF PRISC

| TO: (Name and Title of Staff Member) | DATE: |
| --- | --- |
| Ms. Crogan, Safety Officer | 07-28-05 |
| FROM: Paul Scinto Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: F.S. - A.M. | UNIT: CAT-W  #10 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action bei
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Please be advised that I have been ordered to work
in Food Service notwithstanding severe multiple Disabilities
including ® Knee Replacement w/o Ligaments; © Knee - No Cartilege
Stomach Herniated; Amputated Fingers; Hepatitis + Diabetes.
I cannot wear safety shoes + was told by Dr. Stanley (FMC - Duke)
To Do only Sedentary Work. Please know that my
Cane + Shoes Slip on the Wet Kitchen Foor.
If I Fall Due To This Factor I will be Further
Injured. Please help on this matter.
Thank You.
                                                        Paul Scinto Jr.

(Do not write below this line)

DISPOSITION:

    There is no record of Dr. Stanley's comments in your medical file.
I was told by Medical that you would have to see Dr. Phillips at the
camp to make changes to your medical restrictions. Your supervisor will have
to provide you with a special steel toe shoe made to accommodate
persons with diabetes.

| Signature Staff Member | Date |
| --- | --- |
| R. Crogan | 8/01/05 |

Record Copy - File; Copy - Inmate
This form may be replicated via WP

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

*A Ex 3*

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                                    FEDERAL BUREAU OF PR:

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| DR. Philip, Camp Physician | 07-27-05 |
| FROM: | REGISTER NO.: |
| Paul Scinto SR, | 18933-004 |
| WORK ASSIGNMENT:              ✱ | UNIT: |
| Food Service  A.M. | CAT-W     #10 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action b
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

On 06-22-05 I submitted 6 "cop outs"
(Form BP-S148.055) to your requesting medical
Treatment for several serious Medical Conditions -
my Medical conditions remain untreated &
uncured and I am being forced to
work in Food Service, Notwithstanding Dr.
Stanleys Recommendation That, if I must work
I be given a sedentary type Job & only if Abl
Please answer all "copouts" & put me on inacti
status so I am not Disabled Further. Thank you.
✱ Forced work while disabled/sick - under
medical protest

(Do not write below this line)                          Paul Sci

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

A Ex. 4

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Dr. Philips   MD | 06-22-05 |
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: *Food Service - P.M. | UNIT: CA7-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request Rehabilitation and/or Medical
care for my Right hand.

*Paul Scinto, Sr.*

* Under Medical Protest

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)          This form replaces BP-148.070 dated Oct 86
                                              and BP-S148.070 APR 94

A Ex 5

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) DR. PHILIPS    MD | DATE: 06-22-05 |
|---|---|
| FROM: PAUL SCINTO, SR. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: ✱ FOOD SERVICE   P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request  TREATMENT  FOR  MY  BACK

PROBLEMS.

_____

_____

_____

_____

_____

_____

_____

✱  UNDER  MEDICAL  PROTEST

_____

(Do not write below this line)

DISPOSITION:




| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

A Ex 6



BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Dr. Philips | DATE: 06-22-05 |
|---|---|
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: ✱ Food Service P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request Surgery/Treatment for my
INCISIONAL HERNIATED STOMACH.

*Paul Scinto, Sr.*

✱ UNDER MEDICAL PROTEST

(Do not write below this line)

DISPOSITION:



| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)          This form replaces BP-148.070 dated Oct 86
                                              and BP-S148.070 APR 94

A Ex. 7

BP-S148.055  **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) DR. Phillips | DATE: 06 - 22 - 05 |
|---|---|
| FROM: PAUL SCINTO, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: *Food Service P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request ORTHOPEDIC TREATMENT/SURGERY
For My LEFT Leg.

I Request Follow up TREATMENT FOR MY
Right Leg.

Paul Scinto, Sr.

* UNDER MEDICAL PROTEST

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

A Ex 8

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Dr. Philips | DATE: 06-22-05 |
|---|---|
| FROM: Paul Sciuto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: ✱ Food Service P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I request treatment for Hepatitis C.

*Paul Sciuto, Sr.*

✱ UNDER MEDICAL PROTEST

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

A Ex 9

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Dr. Philips MD | DATE: 06-22-05 |
|---|---|
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: ✱ Food Service P.M. | UNIT: CA7-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I request insulin coverage whenever
my blood glucose levels rise above
200 mg/dl

*Paul Scinto, Sr.*

✱ UNDER MEDICAL PROTEST

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
|  |  |

A Ex 10

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Ms. Horton, Education Supervisor | DATE: July 28, 2005 |
|---|---|
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: FS-AM | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary.  Your failure to be specific may result in no action being taken.  If necessary, you will be interviewed in order to successfully respond to your request.)

Please provide a copy of the current HEALTH SERVICES MANUAL (progam state issued January 2005.(The manuals now available are from 5 to 9 years old.

Please provide this copy to the law library.  Thank you.

*Paul Scinto*
Paul Scinto, Sr.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | A Ex 11 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FCC 1330.13A
09/15/00
Attachment A

## ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

To be completed by the Counselor:

Inmate's Name   Paul Scinto    Reg # 18933-004 Date August 22, 2005

Date and time given to inmate: _DP_ 8-22-05

To be completed by the inmate:

1. Nature of Problem:   Please update Program Statement P60 10 . Health Services
Manual, 01/15/2005; for access in the Law Library. The
Manual now available is 10 years old. I have sent several cop-
outs to Ms. Horton; which are still unanswered. Thank you.

2. State what action or resolution you expect. Be specific:
Put a hard copy or computer access of this Program Statement in the
Law Library.

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

Counselor to check applicable section:

( ) Problem informally resolved on_____

( ) Problem not resolved.  Continue formal procedure.
Explanation for Non-Resolution:

Date: _____    Counselor's Signature: _____

Date: _____    Unit Manager's Signature:_____

Date: _____    Inmate's Signature: _____

A Ex 12

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISON**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| MR. ETERNICK  A.W. MED. SRVS. | 08-23-05 |
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: F.S.  with MED RESTRICT. | UNIT: CAT - W @ B. Tiver MEDICAL CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action bein
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Can you please provide A copy of
The Health Services Manual (P6010. —) in
the Camp Law Library. We have been
designated as a Medical Camp and this
Therefore is a Reasonable Request. There
is an old Manual From 1996 (P6000.25)
which has been Rescinded By The New
Manual Released on Jan. 15, 2005.
Thank You.

_____

(Do not write below this line)

DISPOSITION:




| Signature Staff Member | Date |
|---|---|
|  | A Ex 13 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

<u>Log</u>     Denied Ad. Remedies — Failure To Answer Cop Out
+ Pert. Sick Call Info

<u>2005</u>
Aug 24 — Locked Up - McClintock Order
Aug 26 — <u>Cop Out</u> To Warden (Legal Work Active - Access) — No Ans.
Aug 27 — Sick Call Ms. Hora - Blood in Stool & Vomit
Aug 30 — Sick Call Ms. Pasquarella - Severe Head Aches + Joint Pain
Sept 01 — <u>Cop Out</u> To Oc Paylor - Legal Work Required — No Ans.
Sept 02 — Sick Call: Med + Psych   Arthritis + Adjust. + Confl.
Sep 10 — <u>Cop Out</u> To Warden (Request Time of Spec Ct - 08-24-05) — No Ans.
Oct 11 — <u>Cop Out</u> To Warden (Need Typewriter + Copies For Court Work) — No Ans.
Oct 11 — <u>BP 8</u> To Lyons (Re: Time of Spec Ct) — No Ans.
Nov 11 — <u>Cop Out</u> To Camp Adm (Re: Court Finance Form + 6 month Finance St) — No Ans.
Nov 21 — <u>Cop Out</u> To Camp Adm (Re: Names + Addresses of US Senators/Reps - No A.
Nov 30 — <u>Cop Out</u> To Capt. (Re: SHU Complaints - ① No Counselor - 2 months ② Blocking
        Access To Courts ③ Violation of Due Process - Blocking Ad Rem
        ④ SHU 8th Amend Viol - Diabetes/Hospital Transf ⑤ Res Unp
        12-15-05
        Blocking - Verbal Answer: Do What I Got To Do "
Dec 02 — <u>Cop Out</u> To Warden (Beeler) - Diabetic Drink SHU — No Ans.
Dec 05 — Talk To AW Moon About Non Answ Cop Outs - "Some one Not
        Doing Their Job "
Dec 08 — Sick Call - ® Side Pain Severe - Similar To Initial Incident w
        Dry Heaves - Dizzy - Bloat - Blood Taste in Mouth
        Exams By PA Pasquarella 12-12-05 + 12-19-05 (After
        Blood Work) - " Ring Duress Button if Happens Again "
Dec 12 — P.A. Pasquarella Interview
Dec 19 — P.A. Pasquarella Exam - 9.8 HA1C ↑; Microalbumin 32 ↑
        told to Ring emergency button if Stomach Pain Comes Back
Dec 29 — <u>Cop Out</u> To DHO Tilly - Re: Witnesses Barnes + Parker
<u>2006</u>
Jan 06 — Warden Stansberry - Visit - explained problem - said " we'll
        look into it "

A Ex 14

Jan 13 - DHO Hearing postponed again - stated he never received
cop out

Jan 15 - C. M. Springle - Said refile BP-8

Jan 17 - A.W. Atkinson - came by - asked him why we
were locked down w/o water - no answer

Jan 27 - A.W. Moon - Asked same ? - said "that's a good
question" (why door locked w/o water).
warden - gave copy of BP8 + new cop out -
block & prime abnormalities

Feb 01  sick call - developing growths on neck from
filth no doubt

BP-A148.055
SEP 98

**INMATE REQUEST TO STAFF**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) *Warden Stansbury* | DATE: *09-10-05* |
|---|---|
| FROM: *Paul Sciuto Sr* | REGISTER NO.: *18933-004* |
| WORK ASSIGNMENT: *N/A* | UNIT: *SHU      (FPC)* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

*I am presently in SHU awaiting hearing (DHO) because I used The Emergency phone To call for help after throwing up blood & becoming incoherent with blood in stool. Since being Transfered 7 FPC for Medical my Hepatitis Titer increased 2x, my Diabetes HA1C increased from 7 to 9 & my Blood Pressure has increased 50%. I felt I had an emergency yet am now being punished - I therefore need A FPC/FCI Handbook. P.S. on use of Emergency Phone, Official Statement of Lock Down Census Times for Wed 08-24-05 + Medical Log Book For Hours of 1:30 & 2:30 am for 08/24/05 names not necessary - Just Statement of Appoint. P.S. (Med Serv Man) Defining Inmate Health Care Level/Status ex, Level 3 = ? Also my Medical Records for last 6 months.*

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 6**

*Handwritten Copy - Photocopys Not Available For SHU Inmates*

*AE x 15*

FCC 1330.13C  (BP 8½)   (HAND COPY)

PAUL SCINTO     189 33-004    10/10/05
DATE GIVEN:     10-10-05 @ 12:45 PM

(1) NATURE OF PROBlem : NeeD The Following INFORM. FoR DEFENSE
    OF I. R. : Cop Out To WARDEN ON Sept. 10, 2005
    UNANSWERED AS TO:
        1. PROC. STATE. ON Use OF EMERGENCY Phone
        2. OFFICIAL STATEMENT OF LOCK DOWN CENSUS TIMES Aug 24, 2005
        3. Current Copy OF Health SERVICES MANUAL — P.S. 6000.xx Jan 15, 2005
        4. MEDICAL RECORDS (MINE) FOR LAST 6 MONTHS.

(2) Expected Action

    PROVIDE The Above FoR MY DEFENSE

                              10-10-05   1:00 pm
                              Paul Scinto

A Ex 16

<u>HAND    COPY</u>

Cop Out  To   DNO   MR  Tilly          12-19-05

On 12-19-05  PA Pasquarella  examined
me & told me to "MASH THE EMERGENCY BUTTON"
if The "PAIN" comes BACK AGAIN.  Please CALL
her as a witness. (I am IN SHU for Same).
    Please ALSO know that my Heamaglobin A1C
(DIABETIC INDICATOR) HAS NOW INCREASED TO 9.8 FROM
August Reading of 9.0.
    AGAIN I wish To INFORM You (COPOUT submitte
To you ON 12/05/05) That NURSE TRENT IS My New
STAFF REp. Please Consider - THANK YOU.

                                        Paul Curtis, Sr.


Note:  ON 12.21.05  Ms. PASQUARELLA STATED
    THAT THE REASON FOR EMERGENCY BUTTON
USE IN CRISIS IS To have medical PERSONEL
EXAMINE PATIENT/ INMATE.
    ALSO INSULIN MORNING DOSE INCREASED
FROM   60 units to  66 units.


A Ex 17

BP-A148.055
SEP 98
INMATE REQUEST TO STAFF

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| MR. TILLY    DHO | 12-29-05 |
| FROM: PAUL SCINTO, SR | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: N/A (AM KITCHEN) | UNIT: SHU (CAT-W: Camp) |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

It appears that Mr. Lyris & Mr. Ford were incorrect in telling me that I could not call Inmate witnesses. Several inmates knew I was very sick on August 24th 2005 including RANDOLPH PARKER (CAT E) & WILLIAM BARNS (CAT W). Please call these witnesses to ascertain the extent of my illness on date in question. Thank you,

Paul Scinto, Jr.

"HAND COPY"
(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 6**

AE×18

*HAND DELIVERED To WARDEN STANSBERY* --- -- -- -- - --

FCC 1330.13C
05/10/03
Attachment A

## ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that "inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy". The **staff member** must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

To be completed by the Counselor:

Inmate's Name _PAUL SCINTO_ Reg # _18933004_ Date _01/26/06_

Date and time given to inmate: _01/26/06    AT    1100Rs_

To be completed by the Inmate: *I AM BEING wrongfully detained IN SHU & strenuously*
*OBJECT To ISSUANCE OF INCIDENT REPORT FOR "USE OF*
*PHONE WITHOUT EMERGENCY".* *Notwithstanding MY MEDICAL CONDITIONS*
1. Nature of Problem: *ACCUTE & CHRONIC, WHICH IN THEMSELVES, CONSTITUTED AN emergence*
*I WAS Locked IN A UNIT (CAT-W, AUG 24, 2005) without Access to WATER  WHICH*
*IS PROHIBITED (see: Jackson v Duckworth  et al). This IN itself constituted an*
*emergency & VALIDATES The use of the phone.*
2. State what action or resolution you expect. Be specific.

*Release From SHU & PLACEMENT IN R-DAP (WAITING SINCE 02/05)*

To be completed by the Counselor:

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

Counselor to check applicable section:

(  ) Problem informally resolved on_____

(  ) Problem not resolved.  Continue formal procedure.
        Explanation for Non-Resolution:

_____

_____

_____

Date: _____     Counselor's Signature: _____

Date: _____     Unit Manager's Signature:_____

Date: _____     Inmate's Signature: _____

*A Ex 19*

*HAND DELIVERED    01-27-06*

BP-A148.055
SEP 98
**INMATE REQUEST TO STAFF**

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) WARDEN STANSBERRY | DATE: 01-27-06 |
|---|---|
| FROM: PAUL SCINTO, SR. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: N/A (A.M. Food Serv) | UNIT: SHU (CATAWBA W-CAMP) |

**SUBJECT:** (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

CAN YOU please tell me why, on 08/24/05, inmates were locked in a unit (CATAWBA WEST @ CAMP) without running water (when case law prohibits). I believe Mr. McClintock made a serious error here, in ordering the lockdown while the water was off. This error precipitated events which led to the use of phone to contact staff for which I have been locked in SHU for 5 months. (BP 8 attached)

*"HAVE COPY"*
(Do not write below this line)

**DISPOSITION:**

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 6**

*A Ex 20*

PAUL SCINTO, SR. 18933-004
S.H.U. — L. S. C. I.
P. O. Box 999
BUTNER, NC    27509
JANUARY 29, 2006

The HONORABLE WALTER B. JONES
    CONGRESSMAN, NC 3RD DISTRICT
    1105 - C CORPORATE DR.
    GREENVILLE, NC 27858

DEAR SIR,

    I am a 57 year old disabled inmate, formerly of Craven Co., N C; serving a 78 month sentence for a Federal drug offense. After serving 3 years "good conduct" at Seymore - Johnson F. P. C. (with an 11 month period of hospitalization at the Butner, NC, F. M. C.); I was transferred (June 06, 2005) to the Butner F. P. C. for medical reasons (hepatitis, diabetes, arthritic degeneration of joints, and an infected right knee prosthesis).

    Within 3 months of incarceration at Butner "medical" camp my health worsened considerably with significant increases in: Hemaglobin A 1 C (HA1C - a diabetic treatment indicator); hepatitis virus titre; and blood pressure. Of course, the reason as to why these medical problems have worsened, since confinement to Butner Camp, cannot be properly ascertained without a thorough and objective investigation as to medical treatment and/or lack

21
A EX

PAUL SCINTO, JR.
18933-004
01-29-06

P. 2

thereof. However, at this time I ask only that you note these facts as reasons for my legitimate concern as to my medical care; and as background information as to the reasons that I write to you at this time.

Briefly the incident complained of is as follows: On August 24, 2005; between the hours of 11:00 am and 2:00 pm, several inmates were locked in their living quarters without any water or access to an officer. The water had been turned off at 8:00 am for repairs and officers are rarely stationed within the dormitory units. To make contact with an officer under these conditions, an inmate would have to use the "emergency phone" – which is an unlocked, easily accessible telephone, that simply states "emergency use only". After experiencing a severe bout of bloody vomiting, which was coupled with a myriad of other medical problems; I used the phone to call an officer so that I could get water to wash off the infectious (hepatitis) vomit and try to get some help. When the door was opened I was surrounded by a group of angry staff and then immediately sent to the Special Housing Unit (S.H.U.) without a medical examination; after being told I did not have an emergency and should not have used the phone. I was cited for a "high severity" incident report (#298) – interference of staff during their duties.

There is a major disparity as to exactly what was

Paul Scinto, Jr.
18933-004
01-29-06

p. 3

said on the phone and I am now being told that there was no "recording" mode of the emergency phone call (all inmate telephone calls routinely are tape recorded). Notwithstanding the content of the phone call — the fact that sick inmates were locked down for several hours without water, in and of itself is inhumane and should constitute an emergency situation.

As of this writing, I have not been found guilty of any institutional infraction and yet I still remain housed in the restrictive and punitive conditions of the S.H.U. (now over 5 months). While confined in S.H.U. I am being denied a diabetic diet and access to exercise equipment that elderly and/or disabled inmates need to maintain proper glucose metabolism.

Can you please look into this matter and perhaps help in bringing forth a just solution so that I may live to finish my term of incarceration and return home to my 82 year old mother and 21 year old son.

Thank you for your time and personal attention.

Respectfully Submitted,
Paul Scinto, Sr.

WALTER B. JONES
3D DISTRICT, NORTH CAROLINA

ROOM 422
CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
TELEPHONE: (202) 225-3415

COMMITTEES:
COMMITTEE ON ARMED SERVICES
COMMITTEE ON FINANCIAL SERVICES
COMMITTEE ON RESOURCES

DISTRICT OFFICE:
1105-C CORPORATE DRIVE
GREENVILLE, NC 27858
(252) 931-1003
(800) 351-1857

# Congress of the United States
## House of Representatives
### Washington, DC 20515-3303

February 1, 2006

Mr. Paul Scinto, Sr. 18933-004
Low Security Correctional Institution
PO Box 999
Butner, North Carolina  27509-0999

Dear Mr. Scinto:

I have received your recent correspondence regarding the problems you have encountered at the Low Security Correctional Institution at Butner.

I will be glad to assist you in every way that I can.  I have contacted the appropriate officials with the Bureau of Prisons to express my interest on your behalf.  I will be back in touch with you as soon as I receive a response.

In the meantime, please feel free to contact me if I can be of further assistance.

Sincerely,

Walter B. Jones
Member of Congress

WBJ:wm

A Ex 22



**U. S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Complex*

*Butner, North Carolina 27509*

❑  *Federal Medical Center*
    *P.O. Box 1500*
☑  *Federal Correctional Institution*
    *P.O. Box 1000*
☑  *Low Security Correctional Institution*
    *P.O. Box 999*

February 13, 2006

The Honorable Walter B. Jones
United States Congress
1105-C Corporate Drive
Greenville, North Carolina 27858

Attention: William Moore

RE: SCINTO, Paul
     Register No: 18933-004

Dear Congressman Jones:

I am in receipt of your correspondence dated February 1, 2006, and a letter from your constituent, Mr. Paul Scinto, an inmate who is currently confined at the Federal Correctional Institution, Satellite Camp, Butner, North Carolina. Mr. Scinto expresses concern regarding his inability to manage his diabetic condition while confined in the Special Housing Unit (SHU), specifically his diet and exercise.

Mr. Scinto was placed in the SHU on August 24, 2005, for allegedly interfering with staff during the performance of their duties. Based on security considerations, weight training equipment is not available to inmates confined in the SHU. Although Mr. Scinto was not provided with weight training equipment, he was permitted to exercise one hour each day. Also, inmates who are confined in the SHU are not provided special diets; however, Mr. Scinto was provided education regarding proper food selection for his chronic medical condition. On February 10, 2006, Mr. Scinto was released to the general population and he continues to receive proper medical care for his chronic care condition.

I trust this information will assist you in responding to your constituent. If you have any further questions or concerns, please do not hesitate to contact us.

Sincerely,

Patricia R. Stansberry
Warden



A Ex 23

WALTER B. JONES
3D DISTRICT, NORTH CAROLINA

ROOM 422
CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
TELEPHONE: (202) 225-3415

COMMITTEES:
COMMITTEE ON ARMED SERVICES
COMMITTEE ON FINANCIAL SERVICES
COMMITTEE ON RESOURCES

DISTRICT OFFICE:
1105-C CORPORATE DRIVE
GREENVILLE, NC 27858
(252) 931-1003
(800) 351-1657

# Congress of the United States
## House of Representatives
### Washington, DC 20515-3303

February 21, 2006

Mr. Paul Scinto, Sr. 18933-004
Low Security Correctional Institution
PO Box 999
Butner, North Carolina  27509-0999

Dear Mr. Scinto:

In response to my inquiry on your behalf, I have received the enclosed letter from the Federal Bureau of Prisons.  I believe you will find the reply to be self-explanatory.

Thank you for the opportunity to be of service to you.  With kind regards, I am

Sincerely,

Walter B. Jones
Member of Congress

WBJ:wm
Enclosure

A Ex 24

Paul Scinto, Sr. 18933-004
Federal Prison Camp
P.O. Box 1000
Butner, NC 27509

March 2, 2006

The Honorable Walter B. Jones
    Congressman 3rd District, NC
1105-C Corporate Drive
Greenville, NC 27858

Dear Sir,

   Thank you for your response and corncern. Shortly after receiving your letter I was released from the Special Housing Unit with all charges dropped.

   Serveral serious problems remain, but I am attemting to resolve them through the system now in place. Generally, the U.S. Prison system is seriously overcrowded to the point where it is becoming a public health problem; legal mail is abused and delayed and the administrative remedy system is routinely ignored by staff at all levels.

   Again, I thank you and pray that I do not have to contact you again on these matters.

                              Respectfully Submitted,

                              Paul Scinto, Sr.
                              M.S. Bacteriology & Public Health

A Ex 25

STATEMENT OF PAUL SCINTO, 18933-004                    *November 18, 2005*

    On October 16, 2002; although sick and disabled with: Hepatitis C;
Diabetes, Hypertension (high blood pressure); Arthritis and a massive
infection of the right knee cavity/prosthesis; I entered the B.O.P. at
Seymore-Johnson FPC. For the next 2½ months I received NO treatment for
the infected leg, and it swelled and festered, until on December 25, 2002,
it burst open at the knee; spewing forth blood and purulence.

    I was taken to Lenoir Memorial Hospital in Kinston, NC, where I
received emergency surgery. On January 16, 2003, I was transfered to FMC
@ Butner and put under the care of Dr. Philip for treatment of a severe
bacterial infection of the right leg. Amputation was suggested and I
refused. An alternative course of antibiotic therapy and surgical debrie-
ment was then advised and surgery was performed by Dr. Somers, a contract
physisian, on April 11, 2003. On December 10, 2003, while still recovering
and confined to a wheel chair, I was returned to Seymore-Johnson FPC.
Through much effort and painful exercise I slowly began to develop the
partial use of my right leg, even though parts of the ligaments, tendons
and muscles surrounding the knee had been removed. After a year I was
able to walk with the aid of a cane and brace; and a new contract physi-
cian, Dr. Kasselt (Kinston, NC) had successfully cured the bacterial in-
fection through a series of gentamyocin injections into the knee cavity.

    In May 2005, I was told that I would be transferred to a "medical"
camp at Butner, NC. I objected in writing because I wanted to finish my
medical treatment with Dr. Kasselt. Objection notwithstanding, I was
transfered to FPC Butner on June 6, 2005.

    Immediately, our Glucometers were confiscated and diabetics were
put on a rigid schedule of insulin injection at specific times. My other
medical problems were compounded and made worse when I was: forced into
non-sedentary work; forced to choose between an afternoon insulin inject-
ion or the evning meal (these times conflicted, with pill/insulin lines
lasting as long as 1½ hours); not given any means to exercise – such as
physical therapy style cable-pulley weights (available at Seymore-Johnson
and the FMC); [Non ambulatory/elderly patient/inmates were simply without
a means to exercise],; and not treated for Hepatitis C, although I specif-
ically requested it at least 3 times (Seymore-Johnson, FMC and FPC@ Butner)

    To complicate matters further, I was forced to complain about several
instances of staff violations of BOP policy, including: the opening and

*A Ex 26*

treating of Official Business, U.S. COURT Mail, as regular mail; the
absence of the current/updated Health Service Manual (P.S. 60xx.xx –
January 15, 2005) in the law library (previously available at Seymore-
Johnson); forced work of the sick and disabled, and the failure to pro-
vide diabetic safety shoes or slip proof mats in the kitchen; and the
failure to answer 80% of "Copouts"/Administrative Remedy forms; and
staff threats to "lock me up" if I persisted in "bothering" them.

   Within 3 months at Butner "Health" Camp I became medically worse and
suffered: (1) a 3 fold increase in Hepatitus C virus titre (0.8 to 2.4
million); (2) a 2 point increase in Hemeaglobin A1C (glycolated hemea-
globin – an indicator of failed diabetes treatment – 7.0 to 9.0); and
(3) a 50% increase in an already high blood pressure. I further experi-
enced bouts of incontinence and vomiting with occasional blood in stool
and vomit; and severe headaches (pounding in head at temples).

   This "severe" incident report ends 3 years of Good Conduct and was
termed a "false alarm"; notwithstanding my serious medical problems,
including: (1) untreated Hepatitis C – which results in Liver and Metabo-
lism problems and Neuropathy (See: Exhibit 1) and their consequences;
(2) uncontrolable diabetes – which causes blackout, stroke, kidney damage,
and blood vessel, eye and heart problems; and neuropathy; (3) high blood
pressure (hypertension) – which causes severe headaches, blackouts, heart
attack and stroke; aneurism, kidney destruction, heart problems and a
myriad of other medical problems. My use of the "emergency" phone to con-
tact an officer (the unit door had been locked) was Not a false alarm
given the serious medical problems mentioned above and because I was
throwing up blood/food and experiencing incontinence with blood; shortly
prior to my attempt to get help. Furthermore, I was in extreme pain
and my head was intensly pounding, where I thought it would "explode".

   The incident report further states that I interfered with a "special
census count". If there was a Count at this time (when I used the phone),
I was not aware of it. The Handbook states (p.9) that special counts must
be announced and all inmates are to be returned to their cube or work
location (if at work). This did not occur prior to the use of the phone
and I saw inmates sitting at the tables outside of the unit; I hear Ms.
Helms announce over the P.A. system, for inmate Harris to report to Medi-
cal; and upon being taken from the unit (locked – Catawba West) by Staff
after the incident; there were many inmates standing around the compund,

as is the usual situation. Ms. Helms later told me that she was not aware of the count and must have erred when she called for inmate Harris over the P.A.

There was NO proper NOTICE given of the Count; and/or the Count had ended (I was never counted and pehaps the unit - Catawba West - remained locked as an oversight, especially since Ms. Helms stated that there was only one officer on duty).

Furthermore, there was NO proper Explanation or Notice as to the use of the phone and what constituted an emergency. Absent a proper and detailed explanation, the statement "emergency use only" becomes a sub-jective determination as to what constitutes an emergency. Compare with "SHU" instructions on the use of emergency "duress" botton (See: Exhibit 2). The Unit door was locked and there was NO officer available inside the unit to determine the extent of my emergency. I used the phone to communicate my health emergency with the officer as directed by the the Handbook (p.16).

I have previously spoken to Dr. Philip about the bouts of incontin-ence and was forced to spend $4.00 on "Chubs" (See: Exhibit 3); which are a "wet wipe" for cleaning babies during diaper change; because of my incontinence.

It seemed that all of my medical concerns fell on deaf ears. Copouts to Medical went unanswered (See: Exhibit 4); request for treatment of Hepatitis C was ignored; request for medical records unanswered (SEE: Exhibit 5A); and my request for P.S. 60XX.XX, the Health Services Manual, updated and revised (see: Exhibit 5B) was denied (compare with Seymore-Johnson providing said manual in their law library (see: Exhibit 5CO.). Dr. Philip had called me a "troublemaker" when I directly asked him about Hepatitis C treatment. He and P.A. Menendez "scolded me" for asking for additional insulin [I asked Ms./Nurse Helms) when my glucose reading was extremely high, prior to lunch. In fact, both Dr. Philip and P.A. Menendez told me I was "never" to discuss anything with the nurses (compare to inmate "Right" - Rights & Responsibilities p.24#9, Handbook; right to address concerns with any member of staff].

After my emergency (vomit-incontinence-head pounding) and use of phone - the door was opened and I was surrounded by an angry looking staff. Seeing the look of disgust on Dr. Philip's face I felt it was useless to discuss my medical concerns in such an open and angry forum, while feeling so badly. I started to explain to the officer who had

3

escorted me to my "cube" (to get my leg brace), when Camp Administrator McClintock, rushed over screaming to "lock me up". I was brought to the AdMin. where I again tried to explain to the Control Officer that I was sick and had an emergency. He told me that it was out of his hands as Ms. McClintock had ordered me locked up. NO ONE ever asked me if I was OK or if there was anything wrong. I was further told that I was to be made an "example" of, to discourage all the other sick inmates from using the phone.

It took 3 days in the S.H.U. to get a sick call slip to address my health problems and in about a week after, I was finally examined by P.A. "Pascarella".

I am sorry for any undue stress that I may have caused the staff; however, my emergency was real; and according to the FCI/FPC Handbook, I was:

p.24: Rights & Responsibilities
1) Denied proper Health Care (#1)
2) Not treated with dignity and respect (#5)
3) Not Provided with Information/proper Notice (#6)
4) Not given opportunity to discuss medical problems in privacy (#7)
5) Denied access to health records (#8)
6) Denied right to adress concerns with any staff member (#9)
7) Denied Pain and other medicine (#10)

p.34: Administrative Remedy Procedure was Denied by refusal of Staff to answer Copouts

p.36: Rights and Responsibilities
1) Denied respectful and impartial and fair treatment (#1)
2) Not informed of rules and procedures of FPC Butner - Necessary oper-
ations (compare with Seymore-Johnson - No locks on dorm units and previous use of emergency phone on 2 occassions - when leg broke open and to report possible inmate heart attack re: inmate Adams) (#2)
3) Access to Courts interfered with as "official business" U.S. Court mail was opened, unlogged and delivered 6 days late; furthermore it was not confidential as it was sent through regular mail (this happened at least 4 times - see: Exhibit 6). (#6)

On October 26, 2005 I was taken to FMC Butner to begin a series of diagnostic tests to determine the extent of my medical problems.

I sincerely hope that this misunderstanding can be soon resolved so that I can be returned to the Camp and have easier access to the FMC.

Thank You.

Paul Scinto

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISO**

| TO:(Name and Title of Staff Member) Ms. Crogan, Safety Officer | DATE: 07-28-05 |
|---|---|
| FROM: Paul Scinto Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: F.S. – A.M. | UNIT: CAT – W  #10 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action bein
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Please be advised that I have been ordered to work in Food Service notwithstanding severe multiple disabilities including R)Knee Replacement w/o Ligaments; L)Knee - No Cartilege; Stomach herniated; Amputated Fingers; Hepatitis & Diabetes. I cannot wear safety shoes & was told by Dr. Stanley (FMC-Duke) to do only Sedentary Work. Please know that my cane & shoes slip on the wet kitchen floor. If I fall due to this factor I will be further injured. Please help on this matter. Thank You.

Paul Scinto Sr

(Do not write below this line)

DISPOSITION:

There is no record of Dr. Stanley's comments in your medical file. I was told by Medical that you would have to see Dr. Phillips at the camp to make changes to your medical restrictions. Your supervisor will have to provide you with a special steel toe shoe made to accommodate persons with diabetes.

Exh A

| Signature Staff Member R. Crogan | Date 8/01/05 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                    This form replaces BP-148.070 dated Oct 86

# A Painful Connection: HCV and Neuropathy

. WebMD, Inc.
Reviewed

People with Hepatitis C who suffer numbness or tingling in their extremities know from experience there is an association between HCV and neuropathy. Increasingly, their claims are finding support: according to medical researchers and clinical physicians, there is a "very strong association" between hepatitis C virus and a blood condition called essential mixed cryoglobulinemia (EMC). Among other symptoms, EMC can cause nervous system abnormalities. Researchers have not yet explained the precise connection between HCV, EMC, and neuropathy, nor have they found significantly effective treatments, but knowledge is sure to increase as more people are diagnosed with HCV and its symptoms increasingly studied.

Neuropathy refers to any disease of the nervous system resulting from localized inflammation of the nerves. If symptoms appear in the body's extremities, the condition is called "peripheral neuropathy," and most HCV-related neuropathies are of this sort. Patients complain of numbness, tingling, and muscle weakness. A physical examination may also reveal decreased deep tendon reflexes. Occasionally, arm and back pain occurs. One patient has even blamed the nerve inflammation for lost teeth.

If symptoms derive from brain malfunction, the condition is an encephalopathy, or central nervous system disease, and the symptoms are more sinister than those of peripheral neuropathy. A team led by George W. Petty reported two cases of encephalopathy in HCV-infected patients in the July 1996 issue of the Mayo Clinic Proceedings. In both cases small vessels in the brain became inflamed, impairing blood flow. One patient had numbness in the right lip, hand, and leg, weakness in the right hand and arm, and word-finding difficulty. The other patient had headaches and seizures, although the latter may have come in part from medication for the headaches.

In both peripheral neuropathy and encephalopathy the key physiologic change is the inflammation of blood vessels (vasculitis). The hepatitis C virus probably does not inflame the blood vessels directly. Instead, the vessels are responding to immune system products floating through the blood stream.

When the body senses an invasion by foreign organisms, such as HCV, chemical responses are triggered. Among those responses are various kinds of immunoglobulin, proteins that help kill the foreigners or regulate the immune response. For some reason -- biologists are not sure why -- these immunoglobulins can "glob" together and lodge on the walls of medium and small blood vessels.

The immunoglobulins that are involved are called cryoglobulins because they turn into a gel at cool temperatures (cryo comes from the Greek word for cold). Since cold temperature readily affects the small and middle-sized vessels in the body's extremities, the cryoglobulins are most likely to form in them. It appears that this glob-and-lodge action causes the inflammation of blood vessels. Cryoglobulinemia is the condition of having cryoglobulins in the blood.

Cryoglobulinemia and HCV became linked when researchers found bits of HCV and HCV-specific antibodies trapped in globs of cryoglobulin. They speculated that the cryoglobulinemia was HCV-incited, occurring when cryoglobulins specifically attacked the hepatitis virus. Other

Exh 2    5/25/2005

## SPECIAL HOUSING INMATE RULES

THE FOLLOWING IS A LIST OF RULES THAT SHALL BE OBSERVED IN THE SPECIAL HOUSING UNIT BY ALL INMATES ASSIGNED EITHER TO ADMINISTRATIVE DETENTION OR DISCIPLINARY SEG.
*********************************************************************************

1. ALL CELLS WILL BE CLEANED AND BEDS MADE BEFORE 7:35 AM.
2. ALL INMATES WILL BE DRESSED IN THE ASSIGNED UNIFORM BEFORE 7:35AM.
3. ALL BEDS WILL REMAIN MADE UNTIL 4:30PM.
4. ALL INMATES WILL STAND FOR THE 4:00PM AND 10:00AM COUNTS.
5. NOTHING WILL BE HUNG FROM THE BEDS, OVER VENTS OR WINDOWS.
6. HAIRCUTS WILL BE GIVEN ON SATURDAYS (ONCE EVERY 30 DAYS).
7. CLOTHING WILL BE EXCHANGED TWO TIMES PER WEEK ON MON AND FRI. LINEN WILL BE EXCHANGED ON TUES. AND THURS.
8. RECREATION WILL CONSIST OF **5 HOURS PER WEEK**.
9. COP OUTS ARE REQUIRED FOR HAIRCUTS, LAW LIBRARY, PERSONAL PROPERTY AND RAZORS.
10. **THE DURESS BUTTON WILL NOT BE USED UNLESS THERE IS AN EMERGENCY! AN EMERGENCY IS A LIFE THREATENING SITUATION. USING THE DURESS BUTTON AT ANY OTHER TIME WILL RESULT IN AN INCIDENT REPORT.**
11. TELEPHONE CALLS WILL BE GIVEN EVERY 30 DAYS VIA COP OUT.
12. CAMP AND FCI INMATES WILL NOT HAVE ACCESS TO THEIR PERSONAL PROPERTY, HOWEVER, YOU MAY SHOP COMMISSARY.
13. INMATES WILL RECEIVE DISCIPLINARY ACTION FOR WRITING ON THE WALLS OF THE CELLS.
14. **SEYMOUR JOHNSON INMATES** - YOU WILL NOT BE ABLE TO USE YOUR PIN# TO ACCESS TELEPHONE CALLS.
15. ALL REQUEST FOR UNIT TEAM ASSISTANCE WILL BE ADDRESSED TO VANCE UNIT TEAM, IE VISITING, ETC. FOR HOLD OVER AND INMATES NOT DESIGNATED TO LSCI BUTNER.

**\*NOTE:** **PURSUANT TO BUREAU OF PRISONS INMATE TELEPHONE REGULATIONS: ALL CONVERSATIONS ON THIS TELEPHONE IS SUBJECT TO MONITORING. YOUR USE OF THIS TELEPHONE CONSTITUTES CONSENT TO THIS MONITORING. YOU MUST CONTACT YOUR UNIT TEAM TO REQUEST AN UNMONITORED ATTORNEY CALL.**

**AVISO:** **EN CUMPIMIENTO DEL REGLAMENTO DEL BUREAU OF PRISONS PARA USO DEL TELEFONO INTERNO: TODAS LAS CONVERSACIONES QUE USTED TENGA EN ESTE TELEFONO ESTAN SIENDO ESCUHADES. AL USAR ESTE TELEFONO USTED AUTOMATICAMENTE CONSIENTNE A QUE SU CONVERSACION SEA ESCUCHADA. SI USTED DESEA UNA CONVERSACION PRVADA CON SU ABOGADO, INFORMELO AL GRUPO DE SU UNIDAD (UNIT TEAM).**

FAILURE TO FOLLOW THE ABOVE RULES WILL RESULT IN DISCIPLINARY ACTION.
*********************************************************************************

# THIS IS THE INMATES COPY OF THE RULES.......
# BE SURE TO GIVE HIM THIS COPY UPON LOCKUP!!!

**U.S. Department of Justice**
Federal Bureau of Prisons

**Inmate Personal Property Record—**
**Institution:** _FPC BUTNER_

| 1. Name: SCINTO PAUL | 2. Register Number: 18933-004 | 3. Unit: CATAWBA WEST | 4. Date and Time of Inventory 8-15-05 11:30 AM |
|---|---|---|---|

5. Purpose of Inventory (check one that applies): Date and Time of Action: 8-24-05 2:40 PM

a.___ Admission  b.___ Hospital  c.___ Writ  d.___ Transfer  e.✓ Detention  f.___ Release
g.___ Incoming package  h.___ Other (specify)

6. Disposition (Disp.)
D – Donated   M – Mail   (S) Storage
K – Keep in Possession
C – Contraband (Attach BP–Record–102)

7. Type of Property:

**a. Personally Owned Items**

| # | Article | Disp. |
|---|---|---|
| ___ | Batteries | ___ |
| ___ | Belt | ___ |
| ___ | Billfold | ___ |
| ___ | Books, reading hard___ , soft___ | ___ |
| ___ | Books, religious hard___ , soft___ | ___ |
| ___ | Brassiere | ___ |
| 1 ea | Cap, Hat | ___ |
| ___ | Coat | ___ |
| ___ | Coins | S |
| ___ | Comb | ___ |
| ___ | Combination lock | ___ |
| ___ | Dress | ___ |
| ___ | Driver's license | ___ |
| ___ | Earplugs | ___ |
| ___ | Eyeglass case | ___ |
| ___ | Eyeglasses | ___ |
| ___ | Gloves | ___ |
| ___ | Hair brush/pick | ___ |
| ___ | Handkerchief | ___ |
| ___ | Jacket | ___ |
| ___ | Jogging suit | ___ |
| ___ | Legal Materials | ___ |
| ___ | Letters | ___ |
| ___ | Magazines | ___ |
| ___ | Mirror | ___ |
| ___ | Nail Clippers | ___ |
| ___ | Pant/slacks | ___ |
| ___ | Pen, ballpoint | ___ |
| 5 ea | Pencils | ___ |
| ___ | Personal papers | ___ |
| ___ | Photo album | ___ |
| ___ | Photos | ___ |

| # | Article | Disp. |
|---|---|---|
| ___ | Plastic spoon, cup | ___ |
| ___ | Playing cards | ___ |
| ___ | Purse | ___ |
| ___ | Radio (w/earplug) | ___ |
| ___ | Religious medals | ___ |
| ___ | Ring | ___ |
| ___ | Shirt/blouse | ___ |
| ___ | Shoes | ___ |
| 1 pr | Shoes, shower | ___ |
| ___ | Shoes, slippers | ___ |
| 1 pr | Shoes, tennis | ___ |
| ___ | Shorts | ___ |
| ___ | Skirt | S |
| ___ | Slip | ___ |
| ___ | Social security card | ___ |
| ___ | Socks | ___ |
| ___ | Socks, athletic | ___ |
| ___ | Stamps | ___ |
| ___ | Stockings | ___ |
| ___ | Sunglasses | ___ |
| ___ | Sweater | ___ |
| 2 ea | Sweat pants | ___ |
| 2 ea | Sweat shirt | ___ |
| ___ | Trophy | ___ |
| ___ | T-Shirts | S |
| ___ | Underwear | S |
| ___ | Watch/watch band | ___ |
| ___ | Wig | ___ |
| 2 ea | Shorts | ___ |
| 1 ea | laundry bag | ___ |
| 2 ea | Dental Floss | ___ |
| 2 ea | Mr Brite | ___ |
| ___ | Icy hot problem | ___ |
| 1 ea | Ace hand wish | ___ |
| 1 pkg | Tootsie Roll Pops | ___ |
| 2 ea | Typewriter Correct tape | S |

**b. Hygiene, etc.**

| # | Article | Disp. |
|---|---|---|
| ___ | Dental floss | ___ |
| ___ | Dentures | ___ |
| ___ | Deodorant | ___ |
| ___ | Hair oil | ___ |
| ___ | Noxzema | ___ |
| ___ | Powder | ___ |
| ___ | Razor | ___ |
| ___ | Razor blades | ___ |
| ___ | Shampoo | ___ |
| ___ | Shaving lotion | ___ |
| ___ | Skin lotion | ___ |
| ___ | Soap | ___ |
| 1 ea | Soap dish | S |
| ___ | Toothbrush | ___ |
| ___ | Toothpaste | ___ |
| 1 ea | Toothbrush holder | ___ |
| 1 ea | Cocoa Butter | ___ |
| ___ | bread | S |
| 1 ea | Chubs Wipes | ___ |
| 1 bag | Olives | ___ |
| 1 ea | Correct It | ___ |

**c. Hobbycrafts**

| # | Article | Disp. |
|---|---|---|
| 2 ea | Pepsi | S |
| 2 ea | Mtn Dew | ___ |
| 1 ea | Non Dairy Cream | ___ |
| 1 ea | Olive Oil | ___ |
| 1 ea | Honey | ___ |
| 1 jar | ground Coffee | ___ |
| 1 ea | Minced Onions | ___ |
| 1 ea | Garlic Powder | ___ |
| 2 ea | Popcorn | ___ |

**d. Food/Tobacco Items**

| # | Article | Disp. |
|---|---|---|
| ___ | Canned tobacco | ___ |
| ___ | Chewing tobacco | ___ |
| ___ | Cigarettes | ___ |
| ___ | Cigars, snuff | ___ |
| ___ | Coffeemate | ___ |
| ___ | Cold drink mix, soda | ___ |
| ___ | Fruit | ___ |
| ___ | Honey, Hi-protein | ___ |
| ___ | Instant chocolate | ___ |
| ___ | Instant coffee | ___ |
| ___ | Instant tea | ___ |
| ___ | Pipe cleaner/filters | ___ |
| ___ | Pipes | ___ |
| 1 ea | Plastic bowl w/ lid | ___ |
| 1 ea | Plastic bowl without lid | ___ |
| 1 ea | Fig bars | S |
| 2 pks | Oatmeal | S |
| 3 hrs | raisins | ___ |
| 1 ea | Keefe Coffee | K |
| 1 ea | Parmesan Ch | ___ |
| 1 ea | Peanut Butter | ___ |

**e. Miscellaneous** (List any damaged property and from where it was received; e.g., U.S. Marshal)

8. Items Alleged by Inmate to Have Value Over $100.00
Description of Property                                           Value Alleged by Inmate

☑  No individual item over $100.00

9. Article(s) Listed as "Mail" (M) Are to Be Forwarded to (Name and Address of Consignee):

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify its accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.
Comments

Printed Name/Signature of Receiving Officer: _____  Reg. No.: ___  Date: ___  Time: ___

I have today reviewed the property returned to me. Signature of Inmate: X  Reg. No.: ___  Date: ___  Time: ___

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.
Comments

Exh 5

Printed Name/Signature of Releasing Officer: _____  Date: ___  Time: ___

I have today reviewed the property returned to me. Signature of Inmate _____  Reg. No.: ___  Date: ___  Time: ___

Original — Inmate's Central File; CC: Inmate, R & D, Special Housing

BP-383(59)

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PR

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| DR. Philip, Camp Physician | 07-27-05 |
| FROM: Paul Scinto SR, | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: Food Service A.M. * | UNIT: CAT-W #10 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action b
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

On 06-22-05 I SUBMITTED 6 "copouts"
(Form BP-S148.055) to your requesting MEDICAL
TREATMENT For Several Serious MEDICAL Conditions -
My MEDICAL conditions REMAIN UNTREATED &
UNCURED AND I AM BEING FORCED TO
WORK IN FOOD SERVICE, NOTWITHSTANDING DR.
STANLEYS Recommendation That if I must work,
I be given A SEDENTARY TYPE JOB& ONLY IF ABL
Please Answer All "copouts" & Put me on INACTIV
STATUS SO I AM NOT DISABLED FURTHER. THANK YOU.

* FORCED WORK WHILE DISABLED/SICK - UNDER
MEDICAL PROTEST

(Do not write below this line)                    Paul Sc

DISPOSITION:

Exh 4a

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)          This form replaces BP-148.0
and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Dr. Philips MD | DATE: 06-22-05 |
|---|---|
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: Food Service - P.M. | UNIT: CA7-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request Rehabilitation and/or Medical Care for my Right Hand.

*Paul Scinto, Sr.*

\# Under Medical Protest

(Do not write below this line)

DISPOSITION:

Exh 4 B.

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94



BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) DR. PHILIPS    MD | DATE: 06-22-05 |
|---|---|
| FROM: PAUL SCINTO, SR | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: *FOOD SERVICE   P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I request TREATMENT FOR MY BACK
PROBLEMS.



*   UNDER MEDICAL PROTEST

(Do not write below this line)

DISPOSITION:

Exh 4c

| Signature Staff Member | Date |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Dr. Philips | DATE: 06-22-05 |
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: * Food Service P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request surgery / treatment for my
INCISIONAL   HERNIATED   STOMACH.

Paul Scinto, Sr.

* UNDER   MEDICAL   PROTEST

(Do not write below this line)

DISPOSITION:

Exh 42

| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)        This form replaces BP-148.070 dated Oct 86
                                            and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) DR. Philips | DATE: 06 - 22 - 05 |
|---|---|
| FROM: PAUL SCINTO, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: *Food Service P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request ORTHOPEDIC TREATMENT/SURGERY
for My LEFT Leg.

I Request Follow up TREATMENT FOR MY
Right Leg.

Paul Scinto, Sr.

* UNDER MEDICAL PROTEST

(Do not write below this line)
_____

DISPOSITION:

Ex 4e

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Dr. Philips | 06-22-05 |
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: X Food Service   P.M. | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I Request treatment for Hepatitus C.

Paul Scinto, Sr.

X UNDER MEDICAL PROTEST

_____
(Do not write below this line)

DISPOSITION:

Exh 4

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)



BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Dr. Philips MD | DATE: 06-22-05 |
|---|---|
| FROM: Paul Scinto, Sr. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: ✱ Food Service P.M. | UNIT: CA7-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

I request insulin coverage whenever
my blood glucose levels rise above
200 mg/dl

_Paul Scinto. Sr._

✱  UNDER MEDICAL PROTEST

(Do not write below this line)

DISPOSITION:

Exh 4 G

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)        This form replaces BP-148.070 dated Oct 86
                                            and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| MEDICAL RECORDS OFFICER | July 28, 2005 |
| FROM: PAUL SCINTO, SR. | REGISTER NO.: 18933-004 |
| WORK ASSIGNMENT: FS-AM | UNIT: CAT-W |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Please provide me with copies of my medical records from Nov. 01,2003
until the present date. Please provide me with copies of my last X-Rays
of the Right and Left Legs.

Thank you.

_Paul Scinto, Sr._
Paul Scinto, Sr.

(Do not write below this line)

DISPOSITION:

Exh 5A

| Signature Staff Member | Date |
|---|---|

FCC 1330.13A
09/15/00
Attachment A

## ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Bureau of Prisons Program Statement 1330.13, dated 12/22/95, Administrative Remedy Program, requires that inmates shall informally present their complaints to staff and staff attempt to informally resolve an issue before an inmate files a Request for Administrative Remedy. The staff member must try to resolve the issue informally before the inmate will be given a "Request for Administrative Remedy" form.

**To be completed by the Counselor:**

Inmate's Name _Paul Scinto_ Reg # _18933-004_ Date _August 22, 2005_

Date and time given to inmate: _DL 8-22-05_

**To be completed by the inmate:**

1. Nature of Problem: Please update Program Statement P60 10. Health Services Manual, 01/15/2005; for access in the Law Library. The Manual now available is 10 years old! I have sent several cop-outs to Ms. Horton; which are still unanswered. Thank you.

2. State what action or resolution you expect. Be specific: Put a hard copy or computer access of this Program Statement in the Law Library.

**To be completed by the Counselor:**

1. Date & Time received from inmate:

2. Summary of Investigation:

3. Actions staff members have taken to resolve the matter informally:

**Counselor to check applicable section:**

(  ) Problem informally resolved on_____

(  ) Problem not resolved.  Continue formal procedure.
Explanation for Non-Resolution:

Date: _____  Counselor's Signature: _____
Date: _____  Unit Manager's Signature: _____
Date: _____  Inmate's Signature: _____

Exh 5B



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** HSD/HSS
**NUMBER:** P6010.02
**DATE:** 1/15/2005
**SUBJECT:** Health Services
Administration

1.  **PURPOSE AND SCOPE.**  To deliver medically necessary health care to inmates effectively in accordance with proven standards of care without compromising public safety concerns inherent to the Bureau's overall mission.

2.  **PROGRAM OBJECTIVES.**  The expected results of this program are:

   a.  Staff will be guided in the development and operation of Bureau health care programs.

   b.  Administrative policies, procedures, and controls will be established, implemented, and reviewed.

   c.  Appropriately trained, skilled, and credentialed staff will be employed.

   d.  Lines of authority and accountability will be established to provide for appropriate personnel supervision.

   e.  Inmate medical care will be delivered efficiently and cost effectively within the levels of care established by Bureau policy.

3.  **DIRECTIVES AFFECTED**

   a.  **Directive Rescinded**

      P6000.05   Health Services Manual (9/15/96)

   b.  **Directives Referenced**

      P1221.66   Directives Management Manual (9/15/97)
      P2100.03   Budget Execution Manual (8/4/95)



Note
Legal / Special
Mail Should
Be Stamped
With Date +
Time + Signed
By Inmate
As Per Code of Fed
Reg + BOP Handbook

UNITED STATES POSTAGE
$ 00.37⁰
02 1A
000 4365082    JUL 28 2005
MAILED FROM ZIPCODE 23219

FIRST CLASS

CLERK'S OFFICE
U.S. COURT OF APPEALS
FOR THE FOURTH CIRCUIT
RICHMOND, VIRGINIA 23219
OFFICIAL BUSINESS

2730341000-00 8093

Exh 6A



CLERK'S OFFICE
U.S. COURT OF APPEA
FOR THE FOURTH CIRCUIT
RICHMOND, VIRGINIA 23219

OFFICIAL BUSINESS

TO:

Exh 6B

# RESPONSE EXHIBIT 2

## E-MAIL TO MARTIN HILL, ESQ.



Paul Scinto <pauscisr@gmail.com>

# Att. Martin Hill Esq. Associate General Counsel

1 message

**Paul Scinto <pauscisr@gmail.com>**                                    **Mon, May 19, 2008 at 12:31 PM**
To: info@bop.gov

TO: Martin Hill, Esq. Associate General Counsel

Thank you for you time.

Pursuant to response from U.S. Attorney's Office the Home Addresses of these individual defendants as listed below are also needed - please provide me with the home addresses ASAP so that I may ensure that service is perfected.

Thank you.

Paul Scinto, Sr.

Patricia Stansberry
Complex Warden
FCC Petersburg
P.O. Box 90026
Petersburg, VA 23804

Susan McClintock
Associate Warden
FCI Safford
1529 W. US Highway 366
P.O. Box 820
Safford, AZ 85546

Richard Holt, Jr.
Senior Officer Specialist
FCI Butner
P.O. Box 1000
Old Highway #75
Butner, NC 27509-1000

# RESPONSE EXHIBIT 2